## Staunton

ROBERT LEE LAUGHLIN V. HELEN M. ROSE, ADMINISTRATRIX OF THE
ESTATE OF CORMIE ROSE, DECEASED.

ROBERT LEE LAUGHLIN V. CLIFFORD MCCRACKEN.

September 10, 1958.

Record Nos. 4818, 4819.

Present, Eggleston, C. J., and Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*Stuart B. Campbell* (*Campbell & Campbell,* on brief), for the plaintiff in error.

*Francis W. Flannagan* and *James E. Nunley,* for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

These two cases arise out of an automobile collision which occurred on Highway No. 58, west of Bristol, in Washington county on September 7, 1956. One car owned by Robert Lee Laughlin and driven by Shirley L. Shankle collided with another driven by Cormie Rose, in which Clifford McCracken was a passenger. Rose was killed and McCracken injured in the accident.

Rose's administratrix filed a motion for judgment against Miss Shankle and Laughlin to recover damages for the wrongful death of Rose. McCracken filed an action against the same defendants to recover damages for his personal injuries. In the actions against Miss Shankle it was alleged that her negligence in the operation of the car was a proximate cause of the death of Rose and the injuries to McCracken.

The plaintiffs sought to hold Laughlin on the alleged ground that he was "negligent in permitting" Miss Shankle to drive his automobile "well knowing that she did not have a driver's license and that she was intoxicated," and that such negligence was a proximate cause of the accident.

By consent both cases were tried together before a jury which rendered verdicts in favor of the two plaintiffs against the two defendants. No motion was made by the defendant, Miss Shankle, to

set aside the verdicts against her and judgments were entered thereon and have become final.

Laughlin moved to set aside the verdicts against him on the principal ground that the evidence was insufficient to sustain them and for other alleged errors during the trial. This motion was overruled and judgments were likewise entered against him on the two verdicts. Laughlin has appealed.

In his assignments of error Laughlin challenges the correctness of the trial court's ruling on a procedural matter which arose in this manner: The plaintiffs put on their evidence and announced that they had closed their cases. Up to that time neither Laughlin nor Miss Shankle had testified. Laughlin moved to strike the plaintiffs' evidence on the ground that it was insufficient to sustain verdicts against him in the two cases. This motion was overruled and Laughlin, through his counsel, announced that he would offer no evidence and would stand on his motion to strike. Miss Shankle, who was not represented by counsel, was told by the court that she might offer such evidence in her behalf as she saw fit. She replied that she had no witnesses other than herself and desired to testify. She was permitted to do so. Counsel for Laughlin moved the court to exclude her testimony in so far as it related to the alleged negligence of Laughlin because he had closed his case before she testified. The action of the trial court in overruling this motion is assigned as error.

There is no merit in this assignment. It is well settled that the reopening of a case and the admission of additional evidence after one or both parties have rested is a matter within the discretion of the trial court and its action will not be reviewed unless it affirmatively appears that this discretion has been abused or unless the admission of such additional evidence works surprise or injustice to the other party. 19 Mich. Jur., Trial, § 9, pp. 12, 13, and cases there cited. See also, 88 C. J. S., Trial, § § 105, 106, p. 220 ff. In the present case there is no showing that the admission of this additional evidence was an abuse of the trial court's discretion, or that it worked a surprise or injustice to Laughlin. Miss Shankle had not rested her case. She was one of the principal actors in the tragedy and her account of what occurred was to be anticipated and expected.

■ The principal contention of the defendant, Laughlin, before us as it was in the trial court, is that the evidence is insufficient to sustain the verdicts against him in the two cases.

Viewed from the standpoint of the plaintiffs, the evidence may be summarized thus: At the time of the trial the defendant, Miss Shankle, was twenty-four years of age and lived and worked with her mother who conducted a tourist court and restaurant on Highway No. 58, just west of the city of Bristol. The defendant, Laughlin, was about twenty-six years of age, lived in Tennessee near the Virginia border, and at the time of the accident was in the military service but on a five-day leave. For the preceding several days he and Miss Shankle had been keeping company. He had allowed her to drive his car on several occasions.

About 2:30 p.m., on the afternoon of the accident, Laughlin went to the Shankle restaurant for a cup of coffee. Miss Shankle asked him to take her to the cemetery in order that she might put some flowers on her father's grave. Laughlin agreed to do so. She then went home, procured the flowers, put them in the car which had been parked near by, and waited for Laughlin to come out of the restaurant. Laughlin did not show up promptly.

There is a slight conflict in the evidence as to what then occurred. Miss Shankle testified that the key was in the ignition switch and feeling that Laughlin would not object to her driving the car, as she had done on other occasions, she got in the car and drove off. Floyd Robinson, a witness for the plaintiffs, testified that Laughlin told him shortly after the accident that while he (Laughlin) was drinking coffee in the restaurant and talking to a companion, Miss Shankle came in and requested that he "take her somewhere," and that being busy at the time he "just pitched her the keys, told her to go on." Another witness for the plaintiffs, Trooper Crabtree, testified that shortly after the accident Laughlin had told him that "he let her have the car to take the flowers to her father's grave."

Hence, there is ample evidence to support the jury's finding that Laughlin gave Miss Shankle permission to use the car on that occasion.

Miss Shankle admitted that she had not procured a driver's license as required by Code, § 46-362 ff. She told the jury that Laughlin did not know that; that he had never inquired whether she had a permit, and probably "took it for granted" that she had one. As she said, "He knew I was a good driver."

Floyd Robinson, a relative of the plaintiff, McCracken, testified that on the day after the accident he inquired of Laughlin whether Miss Shankle had an "operator's card" and Laughlin replied, "Well,

I don't know, but I don't think she did." Whether this information was acquired by Laughlin before or after the accident is not shown.

Miss Shankle was injured in the collision and taken to a Bristol hospital immediately thereafter. A nurse on duty there testified that Miss Shankle had an "odor of intoxicants about her."

A state trooper testified that upon his examination of the Laughlin car after the accident he found in it three empty beer cans and four full cans of cold beer. Miss Shankle denied having drunk any of this or any other beer on the day of the accident. In fact, she said she did not drink beer at all and that that found in the car belonged to Laughlin and not to her. She admitted that her mother had given her a "hot toddy" about 9:30 on the morning before the accident because she had complained of laryngitis. To use her words, "It was a pretty strong toddy, but not enough to make me intoxicated." She further testified that she had had nothing else to drink during the day.

At 6:20 p. m. on the day of the accident, with Miss Shankle's permission, a sample of her blood was taken and analyzed. It showed .13 alcoholic content. Under the provisions of Code, 1956 Cum. Supp., § 18-75.3, such alcoholic content "may be considered with other competent evidence in determining the guilt or innocence" of one accused of being intoxicated. However, the result of this blood test was excluded from the jury's consideration of the case against Laughlin and that ruling is not questioned before us. Hence, that evidence is not considered by us in passing on the sufficiency of the evidence to sustain the verdicts against him.

The collision occurred around 3:30 p. m. on Miss Shankle's return from the cemetery. The evidence accepted by the jury is that the Rose car was proceeding westwardly along Highway No. 58 and approaching a sharp curve to the left. It was being driven at a moderate and proper rate of speed on the right-hand side of the twenty-foot road and in its proper lane. The Laughlin car, driven in the opposite direction by Miss Shankle, came around the curve at an excessive rate of speed, apparently out of control, ran across the center lane of the road and into the lane of the oncoming Rose car. Seeing that a collision was imminent, Rose drove his car off the pavement onto the dirt shoulder in the effort to avoid a collision. However, his efforts were unsuccessful, the two cars collided head on, and were practically demolished.

According to Miss Shankle, she was proceeding at not more than

thirty miles an hour when the McCracken car came across the center line and into her lane, and she swerved to avoid it but was unable to do so. The jury's verdict has, of course, settled this conflict adversely to Miss Shankle, and no question is raised as to the sufficiency of the evidence to sustain the finding of the jury that her negligence was a proximate cause of the collision.

As has been said, the plaintiffs' cases against Laughlin are based on the claim that he was negligent in two respects: First, in entrusting the car to Miss Shankle who he knew was an unlicensed driver; and, second, in entrusting the car to her when he knew, or should have known, that she was intoxicated.

With respect to the first count the argument of the plaintiffs runs thus: Code, § 46-347, with certain exceptions not here material, prohibits any person from driving a motor vehicle on the highways of this State without "an operator's or chauffeur's license;" Code, § 46-384, prohibits a person from authorizing or knowingly permitting a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so; the evidence adduced warranted the jury in finding that Laughlin had authorized or knowingly permitted his car to be driven by Miss Shankle, an unlicensed operator; his entrustment of the car to Miss Shankle, in violation of the latter statute, was negligence per se; and it was for the jury to say whether such negligence was a proximate cause of the accident.

We agree that the evidence was sufficient to warrant the jury in finding that Laughlin authorized or knowingly permitted his car to be driven by Miss Shankle. We may assume, without deciding, that the evidence warranted the jury in finding that Laughlin knew that she did not have a driver's license. We further agree that the entrustment of the car by Laughlin to Miss Shankle, in violation of Code, § 46-384, was negligence per se. But it does not follow, as the plaintiffs claim, that the negligence of Laughlin in entrusting the car to the unlicensed driver was a proximate cause of the accident.

There is no showing that she had been denied a driver's license because of incompetency or because she belonged to that class of persons who are forbidden by statute to be licensed. Code, § 46-353 ff. There is no evidence that she was an incompetent driver to whom a license should or would have been denied had she applied therefor. It is undisputed that she had driven the Laughlin car on other occasions and had been involved in no accident. Indeed, there is

no evidence that she had previously been involved in any accident or guilty of the negligent operation of a motor vehicle.

There is no showing that the mere entrustment of the car to her, or her failure to procure a license, had any causal connection with the accident. On the contrary, it is clear that the proximate cause, the real efficient cause, of the collision, as settled by the jury's verdict, was the negligent manner in which Miss Shankle was operating the car at the time. The lack of a driver's license did not proximately cause or contribute to the collision. Nor would it have been avoided had she had a license.

In *White* v. *Edwards Chevrolet Co.*, 186 Va. 669, 672, 43 S. E. 2d 870, 871, we held that the entrustment of a truck to a competent driver who had neglected to have his driver's permit renewed, while in violation of statute,[1] was not a proximate cause of an accident in which the driver was involved. We based that holding upon our earlier decision in *Southern Railway Co.* v. *Vaughan's Adm'r.*, 118 Va. 692, 704, 88 S. E. 305, 308, L. R. A. 1916E, 1222, Ann. Cas. 1918D, 842, that the failure of a competent driver to obtain a chauffeur's license "could not by any possibility have contributed proximately to the happening" of a collision in which he was involved.

There is a full discussion of the subject in the recent case of *Gulla* v. *Straus*, 154 Ohio St. 193, 93 N. E. 2d 662. There a suit against the owner of a motor vehicle was grounded upon his alleged negligence in entrusting the vehicle to an unlicensed driver in violation of a statute which is in the exact language of the Virginia statute (Code, § 46-384). In denying such right of recovery, the court said: "By the great weight of authority, the mere fact that the operator of a motor vehicle was not licensed to operate it as required by statute will not of itself make the owner liable for injury caused by the operation of the vehicle where the failure to obtain or possess such license had no causal relation to the injury." (93 N. E. 2d, at page 664.) See also, *Mt. Nebo Baptist Church* v. *Cleveland Crafts Co.*, 154 Ohio St. 185, 93 N. E. 2d 668; 5A Am. Jur., Automobiles, etc., § 582, p. 594; Annotation, 137 A. L. R. 476.

The principle controls the decision of the case now before us.

---

[1] Michie's Code of 1942, § 2154(195); Code of 1950, § 46-384.

The annotation to Code, § 46-384, incorrectly suggests that it was held in this case that driving a motor vehicle without a license, in violation of statute, was not negligence per se. The opinion does not so hold.

■ The plaintiffs' second count, that Laughlin was negligent in entrusting the car to Miss Shankle who he knew or should have known was intoxicated, is not sustained by the evidence.

Laughlin's negligence, if any, in entrusting the car to Miss Shankle must be determined by what he knew or should have known at the time he entrusted the car to her. As we pointed out in *McNeill* v. *Spindler*, 191 Va. 685, 690, 691, 62 S. E. 2d 13, 16: "The test of liability under the doctrine of entrustment is whether the owner knew, or had reasonable cause to know, that he was entrusting his motor vehicle to an unfit driver likely to cause injury to others. In the case of intoxication, there must be knowledge, or imputable knowledge, that the person to whom the vehicle is entrusted is addicted to the use of intoxicants, or has the habit of drinking. The owner must know, or be chargeable with knowledge, that the driver's habits are such that he is likely to drive while he is intoxicated."

In the present case there is no evidence that Miss Shankle was intoxicated at the time Laughlin entrusted the car to her. There is no evidence that at that time, or at any time prior thereto, she showed any signs of intoxication, or that Laughlin even knew that she had had anything to drink during the day. There is no evidence that he knew, or should have known, that she was addicted to the use of intoxicants or had the habit or reputation of drinking. There is no evidence that she had ever driven a motor vehicle while intoxicated. Cf. *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425.

The only evidence before the jury which the plaintiffs claim tended to prove that Miss Shankle was intoxicated at the time the car was entrusted to her, or at the time of the collision, is the testimony of the nurse at the hospital to which she was admitted after the accident that Miss Shankle had an "odor of intoxicants about her." But, as we said in *Basham* v. *Terry, Adm'x.*, 199 Va. 817, 821, 102 S. E. 2d 285, 288, "The mere odor of alcohol on one's breath is not sufficient to prove intoxication."

It is true that this witness likewise testified that Miss Shankle admitted to her that she had drunk "some beer." But the trial court ruled and instructed the jury that this admission was not evidence against the defendant, Laughlin. It is significant, too, that this witness did not say that Miss Shankle was or appeared to be at all under the influence of intoxicants at the time she talked to her.

We hold that there is insufficient evidence to sustain the verdicts

against the defendant, Laughlin, upon either theory of the plaintiffs, and the trial court erred in not setting them aside. Having reached this conclusion it is not necessary that we pass upon the other questions raised by the assignments of error.

In each case the judgment will be reversed, the verdict set aside, and final judgment here entered for the defendant, Laughlin.

*Reversed and final judgment.*