## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HOWARD C. DENBY v. CHARLES DAVIS, ADMINISTRATOR OF THE
ESTATE OF DOROTHY DAVIS, AN INFANT, DECEASED,
AND DAVID A. PRETLOW.

April 24, 1972.

Record No. 7810.

Present, All the Justices.

*Allan S. Reynolds* (*White, Reynolds, Smith & Winters*, on brief),
for plaintiff in error.

*Calvin W. Breit; Victor J. Ashe* (*Gilbert H. Wilson; Breit, Rutter,
Cohen, Ermlich & Friedman; Preston, Preston, Wilson & Mason*, on
brief), for defendants in error.

COCHRAN, J., delivered the opinion of the court.

Charles Davis, Administrator, brought this action for the wrongful
death of his infant decedent, Dorothy Davis, against David A. Pret-

low and Howard C. Denby. The administrator alleged that Pretlow negligently operated a motor vehicle owned by Denby, causing it to strike Dorothy Davis and inflict fatal injuries upon her. He also alleged that Denby permitted Pretlow to operate the vehicle, knowing that Pretlow was unlicensed to drive and lacked the ability and training to drive a motor vehicle.

The jury returned a verdict against both defendants in the amount of $35,000.00, of which $12,500.00 was awarded as solace to each of the decedent's parents, $2,000.00 was awarded for funeral and medical expenses and $8,000.00 was awarded for financial or pecuniary loss to the decedent's retarded brother, Todd Davis, 10 years of age at the time of trial. To the judgment order entered upon the verdict we granted Denby a writ of error.

The assignments of error raise the following questions which merit our consideration: (1) whether there was evidence from which the jury could find that Denby negligently entrusted his vehicle to Pretlow; (2) whether there was evidence from which the jury could find that such negligent entrustment, if established, was a proximate cause of the accident; and (3) whether the court erred in granting a damage instruction which permitted the jury to award damages for financial or pecuniary loss to the retarded brother of the decedent.

## 1.

Dorothy Davis was 10 years old when the accident occurred on March 7, 1969. Pretlow, driving a Buick car owned by Denby and his wife, lost control of the vehicle, ran off a curve on his righthand side of Bells Mill Road in the City of Chesapeake and knocked down a metal fence in the Davis yard. A piece of the fence struck Dorothy, who was in the yard, and killed her.

Prior to the accident Pretlow had been washing the automobile in the Denby driveway when he decided to drive the car to see a friend who lived several miles away. The accident occurred on the return trip.

Pretlow was 20 years old. He suffered from nystagmus, a congenital defect in his eye muscles which disqualified him from obtaining a driver's license. He had been issued a learner's permit to drive, effective for three months, through a high school driver educational program several years before, but had subsequently failed the visual test for a regular operator's permit. The defect was obvious because his eyes jumped. His sight, rated at 20/70 in the left

eye and 30/100 in the right, was deteriorating and could not be corrected with glasses.

Pretlow testified that during the period of three years that he had been employed to wash the Denbys' cars he had driven the cars as many as twenty times without objection, and usually with Denby's knowledge. He also testified that he had used a car owned by the Denbys with Denby's permission.

Pretlow's father testified that, a year or so before the accident, after seeing his son driving the Denbys' Ford station wagon, he had warned Denby not to permit the boy to operate any motor vehicle because of his impaired vision and inability to obtain a license.

While the evidence shows that Denby, who was not at home at the time, did not give Pretlow express permission to operate the Buick on the day of the accident, it is clear that Denby, having previously asked Pretlow to work on that day, arranged to make the car, with keys in it, available to him. Pretlow testified that, as he often did, he drove the vehicle out of the Denbys' garage onto their driveway to wash and wax it.

In the cases involving negligent entrustment of automobiles which we have heretofore considered, there was express permission to use the vehicles. *Laughlin* v. *Rose, Administratrix,* 200 Va. 127, 104 S.E.2d 782 (1958); *McNeill* v. *Spindler,* 191 Va. 685, 62 S.E.2d 13 (1950); *Crowell* v. *Duncan,* 145 Va. 489, 134 S.E. 576 (1926). However, we see no reason not to apply the same rule of liability where, without express permission, there is a pattern of conduct from which permissive use may be implied. *See Snowhite* v. *State,* 243 Md. 291, 221 A.2d 342 (1966). Moreover, there are circumstances where, without having given either express or implied permission to drive it, an owner may be found to have negligently entrusted his vehicle to another. *E.g., Redmond* v. *Self,* 265 Ala. 155, 90 So. 2d 238 (1956). The correct test of liability is whether the owner knew, or had reasonable cause to know, that he was entrusting his car to an unfit driver likely to cause injury to others. *McNeill* v. *Spindler, supra* at 690, 62 S.E.2d at 16; 2 Restatement (Second) of Torts § 390 (1965).[1]

---

[1] "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

We believe that there was sufficient evidence from which the jury could find that Denby negligently entrusted his Buick to Pretlow. The testimony of Pretlow and his father, if believed, was sufficient to show that Denby turned over his car to Pretlow with reason to know that Pretlow would use it and with knowledge that Pretlow had no operator's permit and was physically unfit to drive an automobile without endangering himself and others. Indeed, the jury could have found from this testimony which, though weak, was not inherently incredible, that Pretlow had implied permission from Denby to use for his own purposes the vehicle placed in his charge.

## 2.

■ In order to impose liability upon Denby, however, the negligent entrustment of his car to Pretlow must have been a proximate cause of the accident. *Laughlin* v. *Rose, Administratrix, supra; Crowell* v. *Duncan, supra.*

Pretlow testified that he was driving at 35 miles an hour just prior to the accident, but there was other evidence that his speed was greater. The speed limit was 25 miles an hour at or near the scene of the accident. Pretlow testified that he lost control of the car and missed the curve while attempting to avoid a bicyclist in the middle of the road. He asserted that his defective eyesight had nothing to do with the accident.

In returning a verdict against Pretlow, the jury could have concluded that the accident was proximately caused either by excessive speed or by Pretlow's impaired vision or by a combination of both. By returning a verdict against both Pretlow and Denby, the jury must have believed that Pretlow's impaired vision was at least a proximate contributing cause, notwithstanding Pretlow's self-serving opinion testimony to the contrary.

The jury rejected Pretlow's testimony that the accident was caused solely by the presence of a bicyclist in the middle of the road, an explanation which, if believed, would have resulted in a verdict for Pretlow. They could also have disbelieved his testimony as to how well he could see the road, the bicyclist and the curve. There was evidence from which the jury could have found that the bicyclist was never at or near the location where Pretlow thought he saw him. From the testimony of A. A. Bell, the only witness, other than Pretlow, who saw the bicyclist, the jury could have believed that the bicyclist was dismounted and off the hard surface of the road on the gravel shoulder. So there was evidence to support a finding that

Pretlow's dangerously defective eyesight was a proximate cause of the accident.

We further conclude that the trial court fairly instructed the jury on the applicable principles of law relating to liability and that no reversible error was committed in the granting or refusing of instructions directed to the liability aspect of the case.

### 3.

▮ The decedent, Dorothy Davis, was survived by her parents, a sister, age 30, a brother, age 28, a brother, age 15, and the retarded brother, Todd, age 10. The adult sister and brother were independent, living in their own homes in the same neighborhood where their parents resided. Dorothy and her two infant brothers lived with their parents. Dorothy was an elementary school student. She had no earnings, but she helped her mother about the house. She was particularly helpful in caring for Todd, the retarded brother, changing his diapers and dressing him, and, in the words of her mother, acting as "a little mother" to him.

The trial court gave the following damage instruction:

### "INSTRUCTION NO. 5

"The Court instructs the jury that if from the evidence and the other instructions of the Court you find your verdict in favor of the plaintiff, you may award damages with reference to the following:

"1. Such sum as to you may seem fair and just, not to exceed $25,000.00, by way of solace for sorrow, suffering and mental anguish occasioned by the death of the decedent to each of the following persons: her father, Charles Davis; her mother, Alice L. Davis; her sister, Alberta Davis Thomas; her brother, Charles Davis; her brother, Andrew V. Davis; and her brother, Todd L. Davis. The jury may direct in what proportion such damages shall be distributed to such persons.

"2. The financial or pecuniary loss, if any, sustained by her father, Charles Davis; her mother, Alice L. Davis; her sister, Alberta Davis Thomas; her brother, Charles Davis; her brother, Andrew V. Davis; and her brother, Todd L. Davis, not to exceed $50,000.00, and in fixing such loss the jury may do so with reference to the probable earnings of the deceased for the duration of her life expectancy if she had not been killed, taking into consid-

eration her age, intelligence and health. The jury shall direct in what proportion any such damages shall be distributed to such dependents.

"3. The funeral expenses of the decedent, not to exceed $500.00, and any actual hospital, medical and ambulance service expenses incurred by or on behalf of the decedent as a result of the defendants' act.

"The jury, in their verdict, shall set forth in separate findings, the amounts which they may award under paragraphs 1, 2 and 3."

Denby objected to the second paragraph of the instruction on the ground that there was no evidence of financial or pecuniary loss to any of the specified beneficiaries.

The second paragraph of the instruction was based upon the following language of Va. Code Ann. § 8-636 (Cum. Supp. 1971):

"In addition to the damages set forth above, the jury may award such further damages, not exceeding fifty thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent or dependents of such decedent and shall further direct in what proportion such damages shall be distributed to such dependents, regardless of class."

We have recently had occasion to consider the meaning of this language in a wrongful death action where the decedent was survived by her husband and an infant child. *Pugh* v. *Yearout*, 212 Va. 591, 186 S.E.2d 58 (1972). We there construed "financial or pecuniary loss" to include monetary contributions and services rendered a dependent "that relate to and have monetary value". *Id.* at 595, 186 S.E.2d at 62.

Dorothy provided companionship for her afflicted brother and saved her mother "many steps" in helping with Todd. But this, which was no more than would be expected of a sister, was insufficient evidence of financial or pecuniary loss. Moreover, although it was not assigned as a ground of objection to the instruction, there was no evidence from which the jury could find that any one was even partially dependent upon Dorothy and thus entitled to reimbursement for financial or pecuniary loss resulting from her death.

We conclude that there was no evidence to support that portion of the verdict which awarded $8,000.00 to Todd for financial or pecuniary loss to him as a dependent of Dorothy's.

Rather than remand the case for a new trial, we will exercise our power to eliminate this item of $8,000.00 which is clearly attributable to the portion of Instruction No. 5 that was unsupported by evidence. *See United Construction Workers* v. *Laburnum Construction Corp.*, 194 Va. 872, 900, 75 S.E.2d 694, 712 (1953).

Accordingly, we shall modify the judgment under review by striking therefrom the sum of $8,000.00 awarded by the jury to Todd Davis, and affirm the balance of the judgment for the sum of $27,-000.00, with interest thereon from November 18, 1970, the date of the verdict. Having substantially prevailed on this appeal the administrator will recover his costs here.

*Modified and affirmed.*