404 S.E.2d 42 (1990)
Robert W. HACK
v.
James E. NESTER, Jr., Administrator, etc.
Kathryn WEAVER
v.
James E. NESTER, Jr., Administrator, etc.
Record Nos. 891494, 891505.
Supreme Court of Virginia.
November 9, 1990.
On Grant of Rehearing April 19, 1991.
*43 Frank Walker Somerville (Somerville, Moore & Somerville, Orange, on brief), for Hack.
Charles F. Purcell (Purcell & Purcell, Louisa, on brief), for Nester.
John W. Zunka (Richard H. Milnor; Taylor & Zunka, Charlottesville, on brief), for Weaver.
Present: CARRICO, C.J., COMPTON, STEPHENSON, RUSSELL, WHITING and LACY, JJ., and COCHRAN, Retired Justice.
On Grant of Rehearing in Record No. 891505 April 19, 1991.
WHITING, Justice.
In this appeal of a motor vehicle collision case, we deal with the dispositive issues of negligent entrustment and punitive damages.
Approximately 5:45 p.m. on January 21, 1988, Robert Wayne Hack received Kathryn Marie Golden Weaver's permission to drive her Chevrolet Suburban[1] to Louisa. After arriving in Louisa, Hack consumed most of a pitcher of beer. About 7:15 p.m., while proceeding in an easterly direction on Route 33, Hack rounded a curve and drove into the westbound lane, where he struck an approaching Nissan car[2] driven by Lisa Hicks Nester. Nester was killed as a result of the collision.
James E. Nester, Jr., Administrator of Nester's estate (the administrator), brought this wrongful death action to recover compensatory and punitive damages from Hack and compensatory damages from Weaver. Hack admitted that his negligence caused Nester's death; however, the issues of Weaver's liability and the amount of damages to be assessed against each party were submitted to a jury.
On May 12, 1989, a jury returned verdicts of $280,000 in compensatory damages against Hack and Weaver, and $50,000 in punitive damages against Hack. On September 11, 1989, judgment was entered on the verdicts.
Hack and Weaver appeal. Because the administrator prevailed in the trial court, consonant with familiar appellate principles, we view the evidence in the light most favorable to him.
NEGLIGENT ENTRUSTMENT
The administrator claims that Weaver is liable for Nester's death because Weaver negligently entrusted her vehicle to Hack. An owner (entrustor) who entrusts his motor vehicle to another person (entrustee) may be liable in some circumstances to a third party who is injured because of the entrustee's negligence. As we said in Denby v. Davis, 212 Va. 836, 838, 188 S.E.2d 226, 229 (1972), "[t]he correct test of liability is whether the owner knew, or had reasonable cause to know, that he was entrusting his car to an unfit driver likely to cause injury to others." The administrator bases his negligent entrustment claim upon the following four factors.
First, Weaver knew that Hack had no driver's license when she entrusted her car to him. Hack's driver's license had been suspended in 1978 and again in 1984 for separate driving under the influence (DUI) convictions. Despite Weaver's denial of knowledge of these DUI convictions, there was sufficient conflicting evidence to support a jury finding that she knew of them.
Although it is negligence per se to entrust a motor vehicle to an unlicensed driver, Code § 46.1-386, there can be no recovery for negligent entrustment unless the reason for the entrustee's disqualification from securing a license was a proximate cause of the collision. See Laughlin v. Rose, 200 Va. 127, 132-33, 104 S.E.2d 782, 786 (1958); cf. Denby (entrustor liable where reason for entrustee's disqualification for driver's license caused plaintiff's *44 injury). Hack's last suspension expired several months before the collision. Therefore, Hack was eligible for reinstatement of his driver's license upon proof of financial responsibility and payment of a reinstatement fee. Code § 46.1-438(B) and (C). Here, as in Laughlin, there was no showing that the entrustee's lack of a license had any causal connection to the collision. Thus, Hack's lack of a driver's license provides no basis for recovery against Weaver.
Second, the administrator contends that Weaver allowed Hack to take her vehicle when she knew that he had experienced night blindness and would have to drive at night in returning to Weaver's home. In support, the administrator cites Denby, where the entrustee was physically disqualified from obtaining a driver's license because of a visual defect. Denby, 212 Va. at 837-38, 188 S.E.2d at 228. In contrast to Denby, the evidence showed that Hack was physically qualified for a driver's license, even without glasses.
Furthermore, the entrustor in Denby knew of the entrustee's disability. Hack testified that he had experienced "a kind of night blindness," in that "[it] gets blurry" when "bright lights are on," and that his glasses overcame the problem. Weaver testified that she knew only that Hack wore glasses because he was nearsighted. This evidence is insufficient to show that Weaver knew, or should have known, that Hack was an unfit driver because of any alleged[3] visual impairment at night.
Third, the administrator maintains that Weaver let Hack drive her vehicle at night without a left headlight. Weaver and Hack testified that the left headlight had been damaged some time before the accident and that it had not been replaced.
An owner is negligent if he entrusts his vehicle to another person when the owner knows, or reasonably should know, that the vehicle's condition makes its normal operation unsafe. See Smith v. Mooers, 206 Va. 307, 310, 142 S.E.2d 473, 475 (1965). The plaintiff, however, must show that the vehicle's unsafe condition was a proximate cause of the collision. Id. at 310, 142 S.E.2d at 475. As we said in an earlier negligence action, "the plaintiff who alleges negligence [must] show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963).
Thus, the administrator had the burden of proving that the lack of a left headlight on Weaver's vehicle was a proximate cause of the collision. He has failed to meet this burden.
There was no evidence that Hack's ability to see Nester's approaching car was reduced because there was no left headlight, or that the lack of a left headlight caused him to drive into Nester's lane of travel. On the contrary, Hack testified without contradiction that the accident occurred because he was blinded by Nester's headlights.
The administrator argues that the lack of a headlight may have confused Nester; therefore, it kept her from driving farther to the right in order to avoid Weaver's vehicle as it approached in Nester's lane of travel. The evidence, however, does not indicate that Nester had attempted to turn away from Hack's vehicle prior to the collision. In fact, the evidence indicated that her left front wheel was only three to four inches on her side of the center line of the highway. Photographs of the scene disclose that the collision occurred a short distance from a sharp curve, with a slope and brush obscuring Nester's view around the curve. Thus, the jury could only speculate that Nester might have had sufficient time and opportunity to turn away from Weaver's approaching vehicle. However, a verdict based on speculative evidence cannot be sustained. Lawson v. Doe, 239 Va. 477, 482, 391 S.E.2d 333, 335 (1990).
Fourth, the administrator argues that Weaver entrusted her vehicle to Hack when she knew that he had "the habit of drinking and driving."
*45 The test of liability under the doctrine of entrustment is whether the owner knew, or had reasonable cause to know, that he was entrusting his motor vehicle to an unfit driver likely to cause injury to others. In the case of intoxication, there must be knowledge, or imputable knowledge, that the person to whom the vehicle is entrusted is addicted to the use of intoxicants, or has the habit of drinking. The owner must know, or be chargeable with knowledge, that the driver's habits are such that he is likely to drive while he is intoxicated.
Laughlin, 200 Va. at 134, 104 S.E.2d at 787 (quoting McNeill v. Spindler, 191 Va. 685, 690-91, 62 S.E.2d 13, 16 (1950)).
Weaver, who had lived with Hack for several months prior to the collision, testified that Hack occasionally drove after he had been drinking, and that he occasionally drank enough alcohol to "affect" him. Based on this testimony and Weaver's knowledge of the record of Hack's 1978 and 1984 DUI convictions, the administrator claims that the jury could find a negligent entrustment upon this ground. We disagree. This evidence is insufficient to establish that Hack's habits were such that he was likely to drive while he was intoxicated.
In sum, we are of opinion that the evidence is insufficient to support the jury's finding of negligent entrustment. Therefore, the trial court erred in submitting this issue to the jury. Accordingly, we will reverse the judgment against Weaver and enter final judgment for her.
PUNITIVE DAMAGES
The administrator bases his claim for punitive damages upon the evidence of: (1) Hack's DUI convictions in 1978 and 1984; (2) his drinking on the day of the collision; and (3) his operation of the vehicle at night on the left side of the highway, without a left headlight, while allegedly suffering from night blindness.
The administrator concedes that none of these acts, standing alone, is sufficiently egregious to warrant an award of punitive damages. He argues, however, that in combination, they supply the requisite "showing of willful or wanton conduct which evinces a conscious disregard of the rights of others." Booth v. Robertson, 236 Va. 269, 272, 374 S.E.2d 1, 2 (1988).
The administrator correctly points out that Booth rejected the notion that malice must be shown in order to recover punitive damages. Nevertheless, the negligence required to sustain a punitive damage award must rise "to the necessary level of wantonness." Id. at 273, 374 S.E.2d at 3.
The Booth defendant had a blood alcohol content of 0.22 percent; Hack's blood alcohol content was an indeterminate amount, somewhere between 0.09 percent and 0.114 percent.[4] Furthermore, immediately before colliding head-on with the plaintiff, the Booth defendant drove his vehicle approximately four-tenths of a mile down the wrong lane of an interstate highway, almost striking an approaching tractor-trailer, whose driver blinked his lights, blew a constant blast on his air horns, and turned to his right and then to his left to avoid striking the defendant. Id. at 270-71, 374 S.E.2d at 1. Even though this accident produced a more tragic result, the evidence here does not present the "egregious set of facts" presented in Booth. Id. at 273, 374 S.E.2d at 3.
Although Hack's negligence certainly caused Nester's death, we cannot say that it showed the conscious disregard for Nester's safety necessary to sustain an award of punitive damages. Therefore, the trial court erred in submitting this issue to the jury and in entering judgment on the jury's verdict awarding such damages. Accordingly, we will reverse that part of the judgment awarding punitive damages and enter final judgment for Hack on that issue.
INSTRUCTION ON THE ELEMENTS OF MANSLAUGHTER
Hack contends that Instruction 26, which explained the elements of the crime *46 of involuntary manslaughter and the degree of proof required for a conviction, should not have been granted because it may have influenced the award of compensatory damages.
Before the jury was empanelled, Hack admitted liability for compensatory damages and asked the court to tell the jury that in fixing its award of compensatory damages, it should not be influenced by the evidence of his negligence, which would be introduced to support the punitive damage claim. The court told him to "[t]ake that up with the instructions." Hack failed to do so.
When the instructions were argued, Hack's grounds of objection to the granting of Instruction 26 were (1) that the instruction should not define the elements of the crime of manslaughter because the indictment was not in evidence, and (2) that the instruction effectively directed a verdict for punitive damages. Because Hack did not state his present objection that Instruction 26 might influence the compensatory damage award or tender an instruction containing the precautionary language he suggested before the jury was empanelled, we cannot consider the objection on appeal. Rule 5:25.
Accordingly, we will reverse Weaver's case and enter final judgment in her favor. We will reverse the award of punitive damages against Hack, and affirm the award of compensatory damages.
Record No. 891494Affirmed in part, reversed in part, and final judgment.
Record No. 891505Reversed and final judgment.
CARRICO, C.J., with whom RUSSELL, J., joins, dissenting in Record No. 891505.
UPON REHEARING IN RECORD NO. 891505
Present: CARRICO, C.J., COMPTON, STEPHENSON, RUSSELL, WHITING, and LACY, JJ., and POFF, Senior Justice.
WHITING, Justice.
In this case, we granted a rehearing to the administrator limited to the "question of negligent entrustment for turning the vehicle over to Hack with a defective headlight." This rehearing was necessary because we had erroneously concluded that the evidence showed that Nester's "left front wheel was only three to four inches on her side of the center line of the highway." (Emphasis added.)
Larry Lam, a State Trooper who investigated the accident, made a number of measurements at the scene. Lam testified that the left side of Nester's car was about 48 inches from the center line of the highway, thus placing the right side of Nester's car "approximately 3 to 4 inches to the right of the inside portion of the white line of her travel lane" at the time of collision.
The jury could have inferred from this evidence that Nester had turned away from Weaver's approaching vehicle prior to the collision and might have turned farther away if she had realized that the approaching vehicle was a car with only its right headlight burning. Even though the evidence indicates that Weaver's left parking light was burning, the jury reasonably could have found that the brightness of the right headlight prevented Nester from seeing the dimmer parking lights in the short time available to her before the collision. Thus, the evidence was sufficient to raise a jury question whether the lack of a left headlight was a proximate cause of the collision. See Smith v. Mooers, 206 Va. 307, 310, 142 S.E.2d 473, 475 (1965). Therefore, the trial court properly permitted the jury to consider this ground of negligent entrustment.
However, the jury might also have found Weaver liable upon any one of the other theories of negligent entrustment advanced by the administrator. And, if dispositive issues are erroneously submitted to a jury and we cannot determine the basis for the verdict from the record, we cannot say that the error is harmless. Ring v. Poelman, *47 240 Va. 323, 328, 397 S.E.2d 824, 827 (1990). Accordingly, we will reverse the judgment against Weaver and remand this part of the case for further proceedings consistent with this opinion.[*]
Record No. 891505Reversed and remanded.
CARRICO, C.J., with whom RUSSELL, J., and POFF, Senior Justice, join, concurring in part and dissenting in part.
CARRICO, Chief Justice, with whom RUSSELL, Justice, and POFF, Senior Justice, join, concurring in part and dissenting in part.
I agree with the majority that the trial court properly permitted the jury to consider the fourth ground of the administrator's claim for negligent entrustment, relating to the defective headlight. I also agree that the trial court erroneously permitted the jury to consider Hack's alleged night blindness. But I do not agree with the majority that it was error for the trial court to permit the jury to consider the administrator's first ground, relating to Hack's lack of a driver's license, and his third ground, relating to Hack's use of alcohol.
Hence, while I agree that there must be a new trial, I would permit the jury on retrial to consider not only the evidence concerning the defective headlight but also the evidence relating to Hack's lack of a license and his use of alcohol.
Concerning Hack's use of alcohol, the majority is correct in stating that "`[t]he test of liability under the doctrine of entrustment is whether the owner knew, or had reasonable cause to know, ... that the person to whom the vehicle is entrusted... is likely to drive while he is intoxicated.' " (Emphasis added.)
The majority states that "Weaver, who had lived with Hack for several months prior to the collision, testified that Hack occasionally drove after he had been drinking, and that he occasionally drank enough alcohol to `affect' him." (Emphasis in original.) The majority also notes Hack's record of two convictions for driving drunk and states that Weaver knew of the convictions.
Thus, there was evidence that Weaver knew Hack occasionally drove after he had been drinking, knew he occasionally drank enough alcohol to affect him, and knew he had been twice convicted previously of driving under the influence. This is sufficient, in my opinion, for the jury to find that Weaver had reasonable cause to know Hack was likely to drive while intoxicated at the time she entrusted him with her vehicle on the fatal night in question.
With respect to the license question, the majority correctly notes that "it is negligence per se to entrust a motor vehicle to an unlicensed driver" but that the reason for the lack of a license must have a causal connection to the collision. The majority then holds that the reason Hack did not have a license was his mere failure to prove financial responsibility and pay a reinstatement fee and that this was not a proximate cause of the collision.
In reality, the reason Hack did not have a license was that he had lost it for driving drunk, and no amount of sophistry can alter that fact. As indicated above, Weaver knew about Hack's prior convictions for driving drunk, and it was this knowledge, coupled with what she learned about his drinking habits from her own observation, that gave her reasonable cause to know he was likely to engage in the same type of misconduct when she entrusted him with her vehicle on the night in question. Hence, there was a sufficient evidentiary connection between the reason for Hack's lack of a license and the fatal collision.
NOTES
[1] The Suburban was a truck-type of station wagon which weighed 4,940 pounds.
[2] The Nissan was a small car weighing 1,916 pounds.
[3] There was no medical evidence that Hack's night vision was impaired. The only medical expert who testified, Hack's optometrist, said that he prescribed glasses to correct Hack's nearsightedness, but did not check Hack for night blindness.
[4] The record discloses no explanation of the inconsistency between the blood test results of 0.09 percent two hours after the collision and a reading of 0.114 percent almost four hours thereafter.
[*] Because there will be a new trial in the case against Weaver, we need not respond to her claim that her defense was prejudiced by the opening statement of Hack's counsel that Hack could have had a driver's license at the time of the collision if he had purchased insurance. On remand, this issue will not arise again because Hack's lack of a driver's license will not be an issue.