MONETTE HUFFMAN

v.

JOSEPH A. LOVE

Record No. 920855

February 26, 1993

Present: All the Justices

*Robert J. Haddad (Shuttleworth, Ruloff, Giordano & Kahle*, on brief), for appellant.

*Edward L. Breeden, III (Breeden, MacMillan & Green*, on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

The sole issue in this automobile collision case is whether the proffered evidence is sufficient to permit a claim for punitive damages to be presented to a jury.

Joseph A. Love was intoxicated at the time he drove his car into an oncoming lane of traffic and sideswiped a car driven by Monette Huffman. Based on the injuries she sustained in the collision, Huffman sued Love to recover compensatory and punitive damages.

Huffman's motion for judgment alleges that

the defendant, Love, operated his vehicle in a careless, wanton, reckless and negligent manner and with a reckless disregard for the welfare and rights of others, including the plaintiff; driving drunk; failing to keep a proper lookout, approaching a dangerous curve at nearly twice the posted speed, driving on the

wrong side of the road, and failing to keep his vehicle under proper control.

Love admitted that he was negligent and that his negligence caused the collision. Prior to trial, Love requested the trial court to limit Huffman's proof to the issue of compensatory damages, on the ground that the evidence was insufficient to establish a claim for punitive damages. Huffman presented an offer of proof to the trial court that formed the factual basis of the court's pretrial ruling.

Huffman proffered the following evidence. The accident occurred at approximately 6:00 p.m. on January 26, 1990. Love had begun drinking whiskey and soda at about 5:00 p.m. He had caused an earlier collision, immediately prior to the collision at issue, when he drove his car into the rear end of another vehicle. The first accident occurred within one mile of Love's collision with Huffman's vehicle.

Love collided with Huffman's vehicle after crossing over into the oncoming lane of traffic. At the time of the accident, he was driving at a speed of 25 miles per hour in a 15 mile per hour zone. Love did not stop at the scene of the accident, but continued driving for three miles. At the time he was stopped, he could not talk, walk, or stand without assistance. The police officers propped him against his truck to protect him from falling and injuring himself.

After the accident, Love did not consume any alcoholic beverages. His blood alcohol level was 0.32%.[1] Love pleaded guilty to driving under the influence of alcohol based on this incident.

Prior to these events, Love had been convicted twice for driving under the influence of alcohol. As a result of each of these convictions, he had participated in the Alcohol Safety and Action Program administered by the Commonwealth, and his license to drive had been suspended.

Based on these facts, the trial court ruled that the evidence was insufficient to create a jury issue on punitive damages. In a jury trial limited to the issue of compensatory damages, Huffman received an award of $30,000. The trial court entered judgment on the verdict, and this appeal followed.

 Huffman argues that the trial court erred in striking her claim for punitive damages. In order to support an award of punitive

---

[1] Under Code § 18.2-269(A)(3), a presumption of intoxication arises when a blood or breath test indicates a blood alcohol content is 0.10% or more by weight by volume of alcohol in the tested person's blood.

damages in a personal injury case, the evidence must establish that the defendant's conduct was so willful or wanton as to show a conscious disregard for the rights of others. *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). Thus, here, as with any issue of fact withdrawn from a jury's consideration, we must consider whether the evidence is such that reasonable persons could draw only one inference therefrom. *See Charlottesville Music Ctr. v. McCray*, 215 Va. 31, 36, 205 S.E.2d 674, 678 (1974). If reasonable persons, upon the facts presented, could differ regarding whether Love's conduct was so willful or wanton as to show a conscious disregard of the rights of others, a jury question is presented. *See id.*; *Booth*, 236 Va. at 273, 374 S.E.2d at 3. Since the trial court struck Huffman's claim for punitive damages, we view the evidence and all reasonable inferences therefrom in the light most favorable to her claim. *See McGowan v. Lewis*, 233 Va. 386, 387, 355 S.E.2d 334, 334 (1987).

The trial court was presented with a succinct body of facts. Viewed in the light most favorable to Huffman, the proffered evidence, including the reasonable inferences deducible therefrom, showed that Love was operating his vehicle while intoxicated at a level three times greater than that of presumed intoxication. He drove his vehicle in this highly intoxicated state, notwithstanding the fact he had received court-ordered education, on the dangers of drinking and driving, as a result of each of his prior drunk driving convictions. Further, at the time of this accident, he knew that his driving ability was impaired because he had just collided with another vehicle. Ignoring this fact, he continued to drive.

Exceeding the speed limit by 10 miles per hour, he crossed over into the oncoming lane of traffic where he collided with Huffman's vehicle. Instead of stopping to see if she was injured, Love left the scene of the accident. When the police stopped Love, he was so intoxicated that he could not talk, stand, or walk. Based on these undisputed facts, we hold that the trial court erred in concluding that there was insufficient evidence to permit reasonable persons to find that Love's conduct was so willful or wanton as to show a conscious disregard of the rights of others.

In reaching this conclusion, we recognize that intoxication, of itself, will not subject a negligent driver to an award of punitive damages. *See Baker v. Marcus*, 201 Va. 905, 910, 114 S.E.2d 617, 621 (1960). Rather, the defendant's entire conduct must be considered in determining whether it showed a conscious disregard for the

safety of others. *See id.* Evidence that a defendant is intoxicated does not alter the evidentiary standard for consideration of punitive damages in a personal injury case. If present, evidence of intoxication is an objective fact, to be considered in the context of the defendant's negligent conduct, in assessing whether there is sufficient evidence to present the issue of punitive damages to a jury. *See Booth*, 236 Va. at 273, 374 S.E.2d at 3.

■ We reject Love's argument that punitive damages could not be awarded here because the facts in this case allegedly are not as egregious as the facts in *Booth*, where punitive damages were ruled a jury question. That is not the applicable test. Each case must be determined on its own set of facts. *See id.* Thus, in determining whether punitive damages may be considered by a jury in an automobile collision case, the trial court's inquiry is limited to ascertaining if reasonable persons could differ in their conclusions whether the defendant's negligent conduct, considered in its entirety, was so willful or wanton as to show a conscious disregard for the rights of others. *See id.* If reasonable persons could reach different conclusions based on the evidence, the trial court may not remove the issue of punitive damages from the jury's consideration.

We also reject Love's argument that *Hack v. Nester*, 241 Va. 499, 404 S.E.2d 42 (1991), compels a different result. The facts presented in *Hack* are distinguishable from those presented here. Unlike Love, defendant Hack had not collided with another vehicle immediately prior to the accident in question. In addition, there was no evidence that Hack was exceeding the speed limit when he collided with Nester's vehicle.

■ Finally, the record showed that Hack's blood alcohol level was close to the statutory level of presumed intoxication. As stated above, Love was intoxicated in excess of three times the statutory level. In determining the degree of a defendant's negligence, intoxication is relevant as an aggravating factor, increasing with the level of intoxication. *Essex v. Commonwealth*, 228 Va. 273, 283, 322 S.E.2d 216, 221-22 (1984); *see also Booth*, 236 Va. at 273, 374 S.E.2d at 3.

■ The purpose of punitive damages is to provide "protection of the public, as a punishment to [the] defendant, and as a warning and example to deter him and others from committing like offenses." *Baker*, 201 Va. at 909, 114 S.E.2d at 620. Since the facts before the trial court presented such an issue for the jury's consideration, we will reverse the judgment of the trial court and remand this case for

a new trial consistent with the principles and conclusions expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE CARRICO, with whom JUSTICE COMPTON joins, dissenting.

When we decided *Booth v. Robertson*, 236 Va. 269, 374 S.E.2d 1 (1988), we said we did not intend the decision "to indicate a lessening of this Court's general reluctance to allow punitive damages in run-of-the-mill personal injury cases" and were merely holding that, "upon the egregious set of facts presented in [the] case, the plaintiff [was] entitled to have a jury consider her claim for punitive damages." *Id.* at 273, 374 S.E.2d at 3. Because the facts presented in the case now before the court do not equal in egregiousness the facts presented in *Booth*, I do not think this plaintiff is entitled to have a jury consider her claim for punitive damages. Accordingly, I would affirm the judgment of the trial court.

JUSTICE WHITING, dissenting.

I disagree with the majority decision in this case. I do not think that the evidence in this case is sufficient to establish a claim for punitive damages.

Our first case dealing with a punitive damage claim against an allegedly intoxicated driver was *Baker v. Marcus*, 201 Va. 905, 908, 114 S.E.2d 617, 620 (1960). In *Baker*, a negligent defendant, whose intoxication was considered "borderline" by the police, ran into the rear of the plaintiff's vehicle. Although we recognized that the defendant's failure to keep a proper lookout for the vehicle ahead of her "may have been partly due to the intoxicants which she had imbibed," we reversed an award of punitive damages because there was "nothing to show that [the defendant] acted in a spirit of mischief, criminal indifference, or conscious disregard of the rights of others." *Id.* at 910, 114 S.E.2d at 621.

Next, we decided *Booth v. Robertson*, 236 Va. 269, 374 S.E.2d 1 (1988), in which the defendant, George Barnitz Robertson, drove his jeep the wrong way down an exit ramp onto an interstate highway into the path of an approaching tractor-trailer truck. In

response, the driver of that vehicle blinked his lights, blew "a constant blast" on his air horns, and swerved his tractor-trailer twice to avoid a collision with Robertson's jeep. *Id.* at 270, 374 S.E.2d at 1. Robertson passed by the left side of the tractor-trailer and kept going "at a pretty high rate of speed." *Id.* Robertson continued for approximately four-tenths of a mile farther down the interstate highway until he collided head-on with the plaintiff. *Id.* After the collision, a blood test showed that Robertson had a blood alcohol content of 0.22%. We held that this "egregious set of facts" supplied the necessary "conscious disregard of the rights of others" to permit an award of punitive damages. *Id.* at 273, 374 S.E.2d at 3.

In the next case, *Hack v. Nester*, 241 Va. 499, 404 S.E.2d 42 (1991), the defendant Hack's car intruded more than four feet into the opposing traffic lane on a curve at night and struck an approaching car head-on, killing its driver. Hack had two drunk driving convictions prior to this collision, and his blood alcohol content was an indeterminate amount between 0.09% and 0.114% after the collision. He was also suffering from "night blindness" and was operating his car without a left headlight.

After comparing not only the difference in Robertson's and Hack's blood alcohol content, but also the particular conduct of each defendant that led to the collision, we concluded that the facts were not sufficiently egregious to justify an award of punitive damages. *Id.* at 507, 404 S.E.2d at 45.

Huffman contends that *Booth*, not *Hack*, controls this case because Love's blood alcohol content was 0.32% and the *Booth* defendant's blood alcohol content was 0.22%. However, this difference is only one of the factors that must be considered. As we have said: "Evidence of intoxication may be offered to show the negligence of a driver; but in the absence of proof of *one or more of the elements necessary to justify an award of punitive damages*, it may not be used to enlarge an award [of compensatory damages]." *Baker*, 201 Va. at 910, 114 S.E.2d at 621 (emphasis added).

Accordingly, I turn to the other evidence relied upon by Huffman to establish her case for punitive damages. This includes evidence that might show Love's knowledge or state of mind, as well as evidence of Love's negligent acts that were direct causes of the collision. And, because the court effectively struck Huffman's claim for punitive damages in sustaining Love's motion *in limine*, I view the evidence and all reasonable inferences therefrom in the light most

favorable to Huffman's claim. *Puent v. Dickens*, 245 Va. 217, 219, 427 S.E.2d 340, 341 (1993) (this day decided).

Love's two previous drunk driving convictions and his participation in Alcohol Safety Action Programs constitute evidence that might indicate his awareness of the general dangers of drunken driving. And Love's knowledge of his incapacity to drive on the night of the accident could also be inferred from the facts that he had two accidents that night and failed to stop following either.

However, the issue is not merely how drunk Love was and how much he was aware of his condition, but also whether his drunkenness, *combined* with his actions directly contributing to the collision, "evince[d] a conscious disregard for the rights of others." Simply being drunk is not enough; a sober driver could evidence such disregard, while a drunken driver may merely be negligent. *See Essex v. Commonwealth*, 228 Va. 273, 283, 322 S.E.2d 216, 221 (1984).

Hence, to decide whether there is sufficient evidence of the necessary wantonness, I think that we must also consider those acts that could have been direct causes of the collision. They are the drunken Love's alleged negligence in: (1) "approaching a dangerous curve" while driving approximately 10 miles per hour in excess of the posted speed limit of 15 miles per hour; (2) failing to keep a proper lookout; and (3) failing to keep his vehicle under proper control, thereby causing it to enter the opposing traffic lane as the Huffman car was approaching.

In my opinion, these negligent acts pale in comparison with the wanton negligence of the defendant Robertson in *Booth*. Although both intoxicated drivers had an accident (or near-accident) with another vehicle before proceeding on to strike the plaintiff's car, Robertson's near-accident gave him notice that he was engaged in the highly dangerous act of driving the wrong way down an interstate highway. And it was his persistence in that very act which caused the collision in *Booth*.

Although Love's alleged prior rear-end collision should have indicated to him that he was intoxicated, his momentary entry into the wrong lane of travel on a curve while going 10 miles an hour over the 15 mile per hour speed limit, in my opinion, is simply not equatable with the egregious act of continuing to drive the wrong way down an interstate highway after a near-collision with a tractor-trailer. Thus, except for going approximately 25 miles per hour in a 15 mile per hour speed zone, I think Love's negligent driving more

closely resembles that of the defendant in *Hack* rather than that of Robertson. And even though Love had a blood alcohol content substantially higher than the defendant in the *Hack* case, I do not think that this difference alone can elevate this run-of-the-mill personal injury case into one permitting punitive damages.

Accordingly, I conclude that the trial court correctly sustained Love's motion *in limine*. Therefore, I would affirm the judgment of the trial court.