Present:  All the Justices

MARK BRIAN HARRIS

v.    Record No. 961774     OPINION BY JUSTICE ELIZABETH B. LACY
                                April 18, 1997
JULIAN DAVID HARMAN, JR., ET AL.

FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
B.A. Davis, III, Judge

This appeal arises from an automobile accident involving two vehicles.  On August 1, 1992, Julian David Harman, Jr., was driving Tracy Lee Sweeney and two of his friends home from the Franklin County Speedway about 11:00 p.m. when a second vehicle, driven by Mark Brian Harris, approached Harman's vehicle from the rear.  For some distance, Harris "tailgated" the Harman vehicle; that is, the Harris vehicle "would get 'real close'" to the rear of the Harman vehicle.  The two vehicles were traveling at speeds estimated at 40 to 60 m.p.h., well above the 30 m.p.h. speed which was safe for that stretch of road.  As the vehicles approached a sharp curve, Harman glanced in his rearview mirror to check Harris' position.  When Harman turned his eyes back to the road, his truck was almost in the curve.  He applied the brakes, but lost control of the vehicle.  The vehicle slid off the road and down into a creek embankment.  Harris' car followed Harman's vehicle off the road at approximately the same point.  There was no contact between the vehicles, but Harman and Sweeney, among others, were injured in the accident.

Sweeney filed a motion for judgment against Harman and Harris seeking recovery for his injuries.  Harman sought

recovery for his injuries in a motion for judgment he filed against Harris. The two cases were consolidated. The jury returned a verdict in favor of Sweeney and against Harman and Harris jointly and severally for $25,000, and a verdict against Harris in favor of Harman for $50,000.

Harris appealed both judgments maintaining that, as a matter of law, his actions were not a proximate cause of the accident and Harman was contributorially negligent. Harris also challenged the verdicts as inconsistent. Harman assigned cross-error to the trial court's refusal to instruct the jury on Harris' willful and wanton negligence.

## I.

### Proximate Cause

Harris argues that he is entitled to final judgment in both actions because the evidence established, as a matter of law, that his actions were not a proximate cause of Harman's vehicle skidding off the road. Harris does not challenge the jury's determination that his actions were negligent, but argues that the evidence shows that Harman's admitted excessive speed and inattention were the sole proximate cause of the accident as a matter of law. We disagree.

Harman testified that just before the accident, he was "[n]ot focusing on what [he] was doing" because he was paying attention to the Harris vehicle. He also testified that Harris' actions frightened, scared, and distracted him. The state trooper investigating the accident testified that when he interviewed Harman two months after the accident, Harman stated

that he "didn't pay much attention to the vehicle being behind him."  The conflicting testimony in this record presents a classic jury issue of whether Harris' tailgating was a proximate cause of the accident, and the trial court was correct in submitting the issue to the jury for resolution.

## II.

### Contributory Negligence

Harris argues that Harman's admissions that he was driving at an excessive speed and failed to maintain a proper lookout require a determination that Harman was contributorially negligent, as a matter of law, and, therefore, that Harris is entitled to final judgment in Harman's action against him. Harman replies that the issue was properly submitted to the jury because Harris' tailgating placed Harman in a position of sudden peril, and, thus, the jury could find that Harman's actions were reasonable under the circumstances.[*]  Harman bases his position on our cases which have excused otherwise negligent acts, such as Perlin v. Chappell, 198 Va. 861, 96 S.E.2d 805 (1957), in which we held

> [i]f the circumstances are such as would reasonably cause a normal person to become greatly excited or frightened, he is not required to exercise the coolness and sound judgment that he would be required to exercise under ordinary circumstances.  One who

_____

[*] Harman also argues that his excessive speed and failure to keep a proper lookout were put into operation by Harris' tailgating and, therefore, the tailgating "entirely supersede[d] the operation" of Harman's negligence.  The jury instruction upon which Harman relies, however, refers to whether Harris' negligence was superseded by Harman's, not vice versa.  Harman did not offer a jury instruction on Harris' negligence as a superseding cause of the accident and we will not consider that argument here.

> negligently places another in a position of sudden
> peril may not complain that the other fails to react
> with wisdom and promptness.

Id. at 866, 96 S.E.2d at 809.

In Perlin, the plaintiff faced a runaway 1,100 pound heifer, and was "so frightened that 'he could not move.'" Id. at 863-64, 96 S.E.2d at 808. Under these circumstances, the plaintiff's failure to take reasonable steps to avoid injury was not negligent. Like Perlin, all the cases relied on by Harman in which the sudden peril doctrine has been applied involved situations in which the actor engaged in some activity which could be considered negligent under normal circumstances, but was not because the actor was faced with immediate peril. Norfolk & Portsmouth Belt Line R.R. Co. v. Parker, 152 Va. 484, 500-01, 147 S.E. 461, 466 (1929)(failing to draw arm in car before collision with train); Richmond Traction Co. v. Wilkinson, 101 Va. 394, 404-05, 43 S.E. 622, 626 (1903)(boy jumping off moving street car when ordered to do so by conductor); South West Improvement Co. v. Smith's Adm'r, 85 Va. 306, 319, 7 S.E. 365, 371 (1888)(young boy opening door of mine chamber when faced with run-away coal train).

In this case, Harris' tailgating did not present Harman with immediate peril. While the record is not precise, it does establish that Harman was aware of Harris' tailgating for four to five miles before the two vehicles approached the curve and that Harman's speed was consistent throughout that four to five mile stretch. Harman was familiar with the road, knew he was approaching the curve, and knew he had to slow down to

negotiate it.  Harman was not put in sudden peril by Harris'
tailgating, but he had been aware of, and had reacted to, the
situation for a period of time.  During that time, Harman, by
his own admission, drove at an excessive speed and failed to
keep a proper lookout.  Accordingly, Harman was
contributorially negligent as a matter of law, and the trial
court erred in submitting that issue to the jury.

III.

Willful and Wanton Negligence

Harman assigned cross-error asserting that the trial court
should have instructed the jury on willful and wanton
negligence and that Harman's contributory negligence would not
bar his recovery from Harris if Harris was guilty of willful
and wanton negligence.

Willful and wanton negligence is one of three levels of
negligence.  Simple negligence is the failure to use the degree
of care an ordinary person would exercise to avoid injury to
another.  The second level of negligence, gross negligence, is
action which shows indifference to others, disregarding
prudence to the level that the safety of others is completely
neglected.  Gross negligence is negligence which shocks fair-
minded people, but is less than willful recklessness.  Griffin
v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984).
Willful and wanton negligence, the third level, is "acting
consciously in disregard of another person's rights or acting
with reckless indifference to the consequences, with the
defendant aware, from his knowledge of existing circumstances

and conditions, that his conduct probably would cause injury to another."  Id. at 321, 315 S.E.2d at 213.

Harman argues that the evidence showed that Harris intended to tailgate Harman, had prior knowledge of the road and curve, and knew that his speed was in excess of the speed required to safely negotiate the curve.  These facts, Harman contends, would support a finding by the jury that Harris' acts were conscious, intentional acts, in "disregard of another person's rights," and that Harris was aware, "from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to others."

Harman applies the phrases we have used to describe willful and wanton negligence in characterizing Harris' conduct.  But adopting his analysis would turn every intentional moving traffic violation into a case of willful and wanton negligence.  Traffic laws are established for the safety of those who are on the public roads.  Every time a driver intentionally violates a traffic law, by definition, the violator is on notice that other users of the road may be injured as a result of his violation.  Such conduct alone, however, does not have the characteristics of conduct generally classified as willful and wanton.  See Baker v. Marcus, 201 Va. 905, 910, 114 S.E.2d 617, 621-22 (1960).

While each case must be resolved on its own facts, willful and wanton negligence generally involves some type of egregious conduct - conduct going beyond that which shocks fair-minded people.  Such conduct has ranged from a driver with a

significantly high blood alcohol content involved in an accident after a prior collision with another car, exceeding the speed limit, driving in the wrong lane, and leaving the scene of the accident, Huffman v. Love, 245 Va. 311, 313, 427 S.E.2d 357, 359 (1993), to a driver intentionally chasing and running into a bicyclist in a dispute over money, Friedman v. Jordan, 166 Va. 65, 68, 184 S.E. 186, 187 (1936), but has not included the actions of a drunk driver who was speeding, took no evasive action to avoid a rear-end collision, and tried to leave the scene of the accident, Puent v. Dickens, 245 Va. 217, 218-19, 427 S.E.2d 340, 341-42 (1993). The conduct complained of in this case, Harris' speed and tailgating, falls far short of the egregious conduct we have previously found necessary to support a finding of willful and wanton negligence. See Clohessy v. Weiler, 250 Va. 249, 253, 462 S.E.2d 94, 97 (1995), and the cases discussed therein. Accordingly, we conclude that the trial court did not err in refusing to instruct the jury on willful and wanton negligence.

IV.

Summary

In summary, we conclude that the trial court properly submitted the issue of whether Harris' actions were a proximate cause of the accident to the jury and that the trial court did not err in refusing to instruct the jury on willful and wanton negligence. Therefore, we will affirm that part of the judgment awarding Sweeney $25,000 for which Harris is jointly and severally liable with Harman. Because we conclude that

Harman was contributorially negligent, as a matter of law, we will reverse that part of the judgment awarding Harman $50,000 damages, and enter final judgment in favor of Harris on that issue.  In light of this disposition, we need not address Harris' challenge that the verdicts were conflicting.

<u>Affirmed in part,
reversed in part,
and final judgment.</u>