PRESENT:  All the Justices

NICHOLE WOODS

v.  Record No. 020466  OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        January 10, 2003
ARMANDO V. MENDEZ, ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Rossie D. Alston, Jr., Judge

In this appeal, we consider whether the trial court erred in sustaining the defendants' demurrers on the grounds that the plaintiff failed to state a claim for punitive damages either under Code § 8.01-44.5 or at common law.

On June 27, 1999, about 2:30 a.m., the plaintiff, Nichole Woods, was a passenger in a vehicle (the Woods vehicle) traveling north on Interstate Route 95 in Prince William County. The Woods vehicle slowed as it approached a vehicle (the Mendez vehicle) owned by Ernesto Mendez-Chavez and driven by his cousin, Armando V. Mendez.[1]  The Woods vehicle was unable to pass the Mendez vehicle, which "swerved . . . back and forth" across three lanes of the highway "so as to impede and obstruct" the movement of other vehicles.

At the same time, another vehicle, driven by James W. Molle, collided with the rear end of the Woods vehicle, causing

_____

[1] Ernesto Mendez-Chavez was a defendant in the trial court on Woods' claim that he negligently entrusted his vehicle to Armando Mendez.  Ernesto Mendez-Chavez was found jointly and severally liable for Woods' injuries in the same trial with the other defendants.

the Woods vehicle to collide with the Mendez vehicle.  The Woods vehicle was "sandwiched" between the Mendez and Molle vehicles and was forced off the highway by the impact of the combined collisions.  The Woods vehicle burst into flames, and Woods was injured as a result of the accident.  Samples of Molle's blood, taken at 5:56 a.m., were subjected to two separate chemical analyses, which indicated that Molle had a blood alcohol concentration (BAC) of 0.13% and 0.14% by weight by volume, respectively.

Woods filed a third amended motion for judgment in the trial court alleging, among other things, that she was injured because of the negligent acts of Armando Mendez (Mendez) and Molle.  In Count I, she sought compensatory damages for the defendants' alleged negligence.  In Count II, Woods asserted a claim for punitive damages against Mendez containing various allegations, including the claim that "Mendez's conduct was so willful and wanton as to show a conscious disregard for the rights of others."  She alleged that Mendez, who was operating a vehicle with a BAC of at least 0.15%, "intentionally swerved" the vehicle "back and forth across three lanes of interstate highway so as to impede and obstruct other motorists."

In Count III, Woods asserted a claim against Molle for punitive damages, alleging that his conduct was "so willful and

wanton as to show a conscious disregard for the rights of others."  She alleged that Molle drove his vehicle while legally intoxicated after consuming "at least 10 beers," and that at the time of the collision his BAC was "0.15% or more by weight by volume."  She also alleged that Molle continued to drink beer while he was driving on the highway and fell asleep, "completely unaware" of her vehicle or the Mendez vehicle.  She further asserted that Molle drove his vehicle "with insufficient sleep and with actual or constructive knowledge that he was in danger of falling asleep."  Woods also alleged that Molle did not attempt any evasive action before his vehicle collided at "full-force" with the rear of the Woods vehicle "at a speed of at least 60 miles per hour."

Mendez filed a demurrer to Count II on various grounds, including the ground that Woods failed to state sufficient facts to support a common law claim for punitive damages.  Molle filed a demurrer to Count III, asserting that Woods failed to allege sufficient facts to support a claim for punitive damages either at common law or under Code § 8.01-44.5.

At the time of the proceedings in the trial court, before the amendment of Code § 8.01-44.5 in July 2002, the statute provided in relevant part[2]:

---

[2] In July 2002, the General Assembly amended clause (ii) of the second paragraph of Code § 8.01-44.5 concerning a

3

In any action for personal injury or death arising from the operation of a motor vehicle, engine or train, the finder of fact may, in its discretion, award exemplary damages to the plaintiff if the evidence proves that the defendant acted with malice toward the plaintiff or the defendant's conduct was so willful or wanton as to show a conscious disregard for the rights of others.

A defendant's conduct shall be deemed sufficiently willful or wanton as to show a conscious disregard for the rights of others when the evidence proves that (i) when the incident causing the injury or death occurred, the defendant had a blood alcohol concentration of 0.15 percent or more by weight by volume or 0.15 grams or more per 210 liters of breath; (ii) at the time the defendant began, or during the time he was, drinking alcohol, he knew that he was going to operate a motor vehicle, engine or train; and (iii) the defendant's intoxication was a proximate cause of the injury to or death of the plaintiff.

At a hearing, Molle argued, among other things, that Woods' claim against him for punitive damages under the statute was fatally deficient because the certificates of analysis showed that his BAC fell below the 0.15% statutory threshold required to establish such a claim. Molle asserted that in civil, as well as in criminal, cases "there should be a presumption that the BAC is the same at the time that the blood is taken or the breath is tested as it was at the time of the accident."

In support of her statutory punitive damages claim against Molle, Woods proffered evidence that a forensic toxicologist would testify at trial that Molle's BAC was "far in excess" of

defendant's knowledge as it pertains to the willfulness of his conduct. That change does not affect the disposition of this

4

0.15% at the time of the collision.  Woods also proffered evidence that the toxicologist would base his opinion on the existing test results and would testify that Molle's BAC declined after the accident as the alcohol metabolized in his system.

The trial court sustained Mendez's and Molle's demurrers.  The court concluded that the allegations, considered in the light most favorable to Woods, failed to state a common law claim for punitive damages against either defendant.  In support of its holding, the court observed that Woods' pleadings did not allege facts indicating that either of these defendants "had prior awareness, from their knowledge of existing circumstances, that their conduct would probably cause injury to another."

The trial court also held that Woods' pleadings failed to state a claim against Molle for punitive damages under Code § 8.01-44.5.  The court first observed that the certificates of analysis showed that Molle had a BAC of 0.13% and 0.14%, which amounts were below the minimum concentration of 0.15% necessary to support a claim for punitive damages under the statute.

The trial court also relied on the Court of Appeals' decision in Davis v. Commonwealth, 8 Va. App. 291, 381 S.E.2d 11 (1989).  There, the Court of Appeals held that Code § 18.2-266(i) establishes a rebuttable presumption that a defendant's

appeal.

BAC at the time of driving is the same as the BAC determined by testing after his arrest, and that a defendant may challenge such test results with other competent evidence. Id. at 300, 381 S.E.2d at 16. The trial court concluded that because Woods, unlike the defendant in Davis, was a plaintiff in a civil case rather than a defendant in a criminal prosecution, she was not entitled to present evidence rebutting Molle's test results, which were conclusive evidence of his BAC when the collision occurred.

At trial, Mendez and Molle conceded liability and a jury considered only the issue of compensatory damages. The jury returned a verdict in favor of Woods against Mendez and Molle in the amount of $27,365.50, plus interest. The trial court entered judgment in accordance with the verdict.

On appeal, Woods first argues that Code § 8.01-44.5 does not provide a presumption that a chemical analysis of a blood or breath sample taken after an accident reflects a driver's BAC at the time of the accident. She asserts that the statute's plain language requires proof that a driver's BAC at the time of the incident was 0.15% or greater, and does not restrict the type of evidence that may be offered to prove that the driver's BAC reached that level when the incident occurred. Thus, she contends that the trial court erred in barring her from producing evidence concerning Molle's BAC at the time of the

6

accident and in applying a conclusive presumption to the test results measuring his BAC more than three hours later.

In response, Molle asserts that Code § 8.01-44.5 establishes a "bright line" requirement that a driver have a BAC of 0.15% before being subjected to liability for punitive damages. Molle argues that a plaintiff in a civil case should not be permitted to meet this requirement by presenting evidence that a driver's BAC at the time of an accident was higher than the BAC results shown from chemical tests administered after the accident. He relies on Davis to support his contentions. We disagree with Molle's arguments.

Under basic rules of statutory construction, we consider the language of Code § 8.01-44.5 to determine the General Assembly's intent from the words contained in the statute. Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001); Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). When a statute's language is plain and unambiguous, courts are bound by the plain meaning of that language. Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002); Cummings, 261 Va. at 77, 540 S.E.2d at 496; Earley v. Landsidle, 257 Va. 365, 370, 514 S.E.2d 153, 155 (1999). Therefore, when the General Assembly has used words of a plain and definite import, courts cannot assign to them a construction that effectively would add words to the statute and

7

vary the plain meaning of the language used.  Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001); Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 349 (2001).

We conclude that the language of Code § 8.01-44.5 is plain and unambiguous.  This language permits a plaintiff who institutes a personal injury action arising from the operation of a motor vehicle to request punitive damages when the evidence establishes that the defendant acted with malice or with willful or wanton negligence.  A person's conduct may be deemed willful or wanton when certain statutory requirements are met.  One such requirement is that "when the incident causing the injury or death occurred, the defendant had a blood alcohol concentration of 0.15 percent or more by weight by volume or 0.15 grams or more per 210 liters of breath."  Id.

The above language requires proof of a defendant's BAC at the time of the incident and does not stipulate any particular method of proving this fact.  In contrast, the rebuttable presumption recognized by the Court of Appeals in Davis is based on the language of Code § 18.2-266(i), which requires that a driver's BAC be determined by a particular mode of testing, namely, "a chemical test administered as provided in this article."  Thus, we conclude that the holding in Davis is inapposite to a proper construction of Code § 8.01-44.5.

8

The trial court, however, used the holding in Davis to create a conclusive presumption in Code § 8.01-44.5, in the absence of any language in that statute requiring a particular method of proof or otherwise reflecting a legislative intent to provide a statutory presumption.  The trial court's interpretation was erroneous because it effectively added language to the provisions of a plain and unambiguous statute.  Thus, we hold that Code § 8.01-44.5 does not establish any evidentiary presumption regarding the results of a chemical analysis conducted on a sample of a driver's blood or breath taken after his arrest under Code § 18.2-266 for driving under the influence of alcohol.

In reaching this conclusion, we express no opinion concerning the admissibility of Woods' proffered expert testimony about Molle's BAC at the time of the accident.  The admissibility of such expert testimony is a matter submitted to the trial court's sound discretion upon application of fundamental principles, including the requirement that the evidence be based on an adequate foundation.  John v. Im, 263 Va. 315, 319-20, 559 S.E.2d 694, 696 (2002); Keesee v. Donigan, 259 Va. 157, 161, 524 S.E.2d 645, 647-48 (2000); Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996).

We turn now to consider Woods' argument that the trial court erred in sustaining the defendants' demurrers to her

9

common law claims for punitive damages.  She contends that the recitations in her pleadings, as set forth above, sufficiently alleged a common law claim for punitive damages against both Molle and Mendez, because reasonable persons could conclude that each defendant's conduct constituted willful and wanton negligence.

In response, Molle and Mendez argue that the trial court properly sustained their demurrers to Woods' common law claims for punitive damages because the facts alleged in her pleadings were insufficient to establish that their conduct was willful or wanton.  They assert that intoxication alone is not sufficient to subject a negligent driver to a plaintiff's claim for punitive damages, and that an intoxicated defendant is liable for punitive damages only when he had knowledge before an accident of other circumstances creating a likelihood of injury to others.  In addition, Mendez contends that Molle was the sole cause of Woods' accident and injuries.

In resolving these issues, we first state the general principles that govern our inquiry.  Because Woods' punitive damages claims were decided on demurrer, we consider as true all material facts properly pleaded by her and all inferences that may be drawn from those facts.  <u>Rutter v. Jones, Blechman, Woltz & Kelly, P.C.</u>, 264 Va. 310, 312, 568 S.E.2d 693, 694 (2002);

10

McDermott v. Reynolds, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000).

A claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton. Huffman v. Love, 245 Va. 311, 314, 427 S.E.2d 357, 359-60 (1993); Booth v. Robertson, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988); see Alfonso v. Robinson, 257 Va. 540, 546-47, 514 S.E.2d 615, 619 (1999). Willful and wanton negligence is action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another. Id. at 545, 514 S.E.2d at 618; Harris v. Harman, 253 Va. 336, 340-41, 486 S.E.2d 99, 101 (1997). Each case raising an issue concerning the sufficiency of a claim of willful and wanton negligence must be evaluated on its own facts. Alfonso, 257 Va. at 545, 514 S.E.2d at 618; Harris, 253 Va. at 341, 486 S.E.2d at 102; Huffman, 245 Va. at 315, 427 S.E.2d at 360.

Intoxication, of itself, will not subject a negligent driver to a punitive damages award. Id. at 314, 427 S.E.2d at 360; see Baker v. Marcus, 201 Va. 905, 910, 114 S.E.2d 617, 621 (1960). Instead, a driver's alleged conduct must be considered in its entirety in determining whether that conduct showed a

11

conscious disregard for the safety of others.  Huffman, 245 Va. at 314-15, 427 S.E.2d at 360.  If reasonable persons could disagree in their conclusions whether a defendant's alleged conduct was so willful or wanton as to show a conscious disregard for the rights of others, a trial court may not remove the issue of punitive damages from the trial of a case.  See id. at 315, 427 S.E.2d at 360.

We disagree with Molle's argument that Woods' factual allegations were insufficient to state a common law claim for punitive damages.  According to the facts alleged, Molle was operating his motor vehicle after consuming "at least 10 beers," having attained a BAC level significantly greater than that established for a criminal conviction of driving under the influence of alcohol.  He continued to drink beer while driving his vehicle in this intoxicated state, knowing that he had not slept sufficiently and was in actual danger of falling asleep.

Molle thereafter fell asleep and his vehicle collided with Woods' vehicle at a speed of at least 60 miles per hour.  Because he fell asleep prior to the collision, Molle made no attempt to slow his vehicle's speed or to take any other evasive action to avoid the collision.

We hold that based on these facts, reasonable persons could differ in their conclusions whether Molle acted with reckless indifference to the consequences of his actions with knowledge

of circumstances indicating that he would probably cause injury to others. We observe that the knowledge component of this standard is supported by the cumulative circumstances of his lack of sleep, his intoxicated state, and the fact that he knew he was in actual danger of falling asleep. Thus, we conclude that the trial court erred in striking Woods' common law punitive damages claim against Molle.

We likewise conclude that Woods' allegations against Mendez were sufficient to support a common law claim for punitive damages.[3] Mendez had a stipulated BAC of 0.18% and, according to Woods' pleadings, he intentionally swerved his vehicle "back and forth" across three lanes of interstate highway in a manner that impeded and obstructed other highway drivers.

We conclude that based on these facts reasonable persons could differ in their conclusions whether Mendez's actions were sufficient to meet the established standard for proving willful and wanton negligence. The knowledge requirement of this standard is supported by the allegations that Mendez intentionally engaged in a sustained, highly erratic pattern of driving that affected several lanes of travel on an interstate

---

[3] Woods also had asserted a claim for statutory punitive damages under Code § 8.01-44.5 against Mendez. At trial, the court struck Woods' evidence on this claim based on its conclusion that the evidence failed to show that Mendez knew he would be driving when he began drinking, or during the time that

highway, endangering the other drivers who lawfully were operating their vehicles at high rates of speed on the highway. Mendez engaged in these dangerous maneuvers in an intoxicated state evidenced by a BAC of more than twice the level established for a criminal conviction of driving under the influence. Thus, we conclude that the trial court erred in striking Woods' common law punitive damages claim against Mendez.

For these reasons, we will reverse the trial court's judgment and remand the case for a trial on the merits of Woods' statutory and common law punitive damages claims against Molle, and on the merits of her common law punitive damages claim against Mendez.

<u>Reversed and remanded.</u>

JUSTICE KINSER, concurring in part and dissenting in part.

I agree with the majority's rationale and conclusion regarding Nichole Woods' claim for punitive damages pursuant to Code § 8.01-44.5. However, I disagree with the majority's determination that Woods pled sufficient facts to state a claim for common law punitive damages as to both defendants. In any case involving willful and wanton negligence, the evidence must show that a defendant had prior knowledge or notice of specific

he was drinking, alcohol. Woods has not appealed from this part

14

conditions, or of actions or omissions, that would likely cause injury to other individuals.  See Alfonso v. Robinson, 257 Va. 540, 546, 514 S.E.2d 615, 619 (1999); Clohessy v. Weiler, 250 Va. 249, 253, 462 S.E.2d 94, 97 (1995).  As our previous cases demonstrate, only the most egregious set of facts will justify submitting the issue of punitive damages to a jury.

    For example, in Booth v. Robertson, 236 Va. 269, 270, 374 S.E.2d 1, 1 (1988), the defendant drove his vehicle the wrong way down an exit ramp onto Interstate 81 narrowly avoiding a collision with a tractor-trailer truck.  The driver of that truck "blinked his lights[,] blew 'a constant blast' on his air horns[,]" and had to swerve in order to avoid hitting the defendant's vehicle.  Id.  The defendant passed the truck and " 'just kept going . . . at a pretty high rate of speed.' "  Id. He then traveled approximately four-tenths of a mile farther down the interstate in the wrong direction before colliding head-on with the plaintiff.  Id.  A certificate of blood analysis indicated that, at the time of the accident, the defendant had a blood alcohol content of 0.22% by weight by volume.  Id. at 271, 374 S.E.2d at 1.  We held that "the egregious set of facts presented" was sufficient to submit the plaintiff's punitive damages claim to a jury.  Id. at 273, 374 S.E.2d at 3; see also Webb v. Rivers, 256 Va. 460, 464, 507

of the trial court's judgment.

S.E.2d 360, 363 (1998) (evidence that defendant drove 90 m.p.h. in a 25 m.p.h. residential neighborhood, failed to stop at a red traffic light, and had a blood alcohol content of 0.21% was sufficient to submit punitive damages claim to a jury); Huffman v. Love, 245 Va. 311, 313, 427 S.E.2d 357, 359 (1993)(evidence that defendant had blood alcohol content of 0.32% and had caused a collision immediately prior to the collision at issue was sufficient to allow punitive damages claim to be presented to a jury).

However, in Hack v. Nester, 241 Va. 499, 507, 404 S.E.2d 42, 45 (1990), we held that the evidence did not "present the 'egregious set of facts' presented in Booth" and that the trial court, therefore, erred in submitting the issue of punitive damages to the jury. Id. The defendant in Hack crossed into the opposite lane of travel on a curve and collided with another motorist, killing her. Id. at 502-03, 404 S.E.2d at 43. The plaintiff based the punitive damages claim upon evidence that, at the time of the accident, the defendant's blood alcohol content was somewhere between 0.09% and 0.114%, he had two prior convictions for driving under the influence, and he was operating the vehicle on the left side of the highway, without a left headlight and while allegedly suffering from night blindness. Id. at 506-07, 404 S.E.2d at 45. We concluded that, although the defendant's negligence certainly caused the death

16

of the other motorist, it did not show the conscious disregard for her safety necessary to sustain an award of punitive damages. Id. at 507, 404 S.E.2d at 45; see also Puent v. Dickens, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993) (the combined factors of a defendant, with a blood alcohol content of 0.24%, failing to apply brakes to avoid hitting a vehicle that had stopped at a traffic signal and exhibited lighted brake and rear lights was insufficient to justify an award of punitive damages).

In my view, the requirement of prior knowledge of specific conditions that would likely cause injury to others is missing with regard to both defendants in this case. When compared to our prior cases, the "knowledge component" is not satisfied by Woods' allegations that Armando V. Mendez had a blood alcohol content of 0.18% and swerved his vehicle across several lanes of an interstate highway, nor by the allegations that James W. Molle was intoxicated and drove with insufficient sleep. Allegations sufficient to show a conscious disregard for the rights of others, such as prior accidents, near collisions, or excessive speed, are missing in this case.

For these reasons, I respectfully concur in part and dissent in part.