# CIRCUIT COURT OF NORTHUMBERLAND COUNTY

James Marston

v.

John Barnes

April 18, 2014

Case No. CL13-76

By Judge Harry T. Taliaferro, III

In this case, the plaintiff James Marston seeks to recover damages from the defendant John Barnes for personal injuries plaintiff sustained as the result of being shot by the defendant. It is alleged that, while both were hunting, the defendant fired his shotgun loaded with number four shot striking the plaintiff in his torso, head, face, and neck. (Comp. ¶¶ 7, 8, 18 & 19.) This Court on February 20, 2014, heard oral arguments on the Demurrer filed by the defendant John Barnes to Count II: Gross Negligence and Count III: Punitive Damages. The defendant demurs on the grounds that the plaintiff has failed to allege facts sufficient to support claims of gross negligence or punitive damages.

In a demurrer, the Court accepts all facts alleged and all matters reasonably inferred from plaintiff's pleading to be true. The merits of the claim are neither evaluated nor decided, rather the Court only tests the factual allegations to determine whether the plaintiff's pleadings state a cause of action. *West Alexandria Properties, Inc. v. First VA Mtg. & Real Estate Inv. Trust*, 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982). Va. Code § 8.01-273. The mention in a pleading of an accompanying exhibit shall make such exhibit a part of the pleading. Rule 1:4(i).

The gravamen of the demurrer is whether the plaintiff will be able .to go forward on his claim for punitive damages, which are permissible only where there was intentional misconduct, malice, or willful or wanton conduct. *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685-86, 152 S.E.2d 271 (1967). Because punitive damages are in the nature of a penalty, they are not generally favored and should be awarded "only in the cases involving the most egregious conduct." *Bowers v. Westvaco Corp.*, 244 Va. 139, 150, 419 S.E.2d 661 (1992).

There are three levels of negligence. The first level, simple negligence is defined as "the failure to use the degree of care an ordinary person would exercise to avoid injury to another." *Harris v. Harman*, 253 Va. 336, 340, 486 S.E.2d 99 (1997). Gross negligence, the second level of negligence, is defined as "action which shows indifference to others, disregarding prudence to the level that the safety of others is completely neglected. Gross negligence is negligence which shocks fair minded people, but is less than willful recklessness." *Grifin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210 (1984). The third level, willful and wanton negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* at 321.

The defendant argues that the plaintiff has alleged just two facts relating to negligence, that the defendant saw movement in the woods thinking it was a turkey (Comp. ¶ 16) and shot without making absolutely sure he was shooting at a turkey. (Comp. ¶ 17.) The defendant cites *Harris v. Harman*, 253 Va. 336, 486 S.E.2d 99 (1997), as his primary legal authority that the plaintiff has not sufficiently pleaded facts supporting gross negligence and willful and wanton conduct. There, it was held the trial judge did not err in refusing to instruct the jury on willful and wanton negligence where the evidence had been that the defendant intentionally committed a traffic violation by tailgating, had prior knowledge of a curve in the road, and drove too fast to safely negotiate such curve. In rejecting the plaintiff's argument that such evidence would support jury findings that the defendant's acts were conscious and intentional and were in disregard to another's rights and that the defendant was aware his conduct would probably cause injury to another, the Supreme Court stated that accepting the plaintiff's arguments characterizing the defendant's conduct "would turn every intentional moving traffic violation into a case of willful and wanton negligence." *Id.*, 253 Va. at 341.

The defendant also argued the cases cited by the plaintiff should be distinguished because they were criminal cases involving involuntary manslaughter, applying statutory elements of criminal negligence which are different from the civil standards of willful and wanton conduct. The defendant suggested in his argument that the plaintiff's failure to cite any civil case as authority on punitive damages clearly establishes that plaintiff's factual allegations fail to establish the type of egregious conduct that must exist in order for punitive damages to be awarded.

The plaintiff on the other hand argues that he has not just pleaded that the defendant fired without seeing his target fully and without identifying his target as a turkey. The plaintiff points out that he also pleaded that the defendant had taken hunter safety courses and was an experienced hunter, that, at the time, he had no permission to hunt the property, that he knew

others would likely be there hunting and that, while hunting with number four shot lethal to a turkey, he fired his shotgun thereby badly wounding the plaintiff at the torso, head, face, and neck. (Plaintiff's factual allegations ¶¶ 5 through 19.) The plaintiff argues that all these factual allegations taken together establish circumstances that would shock fair minded persons and which show the defendant acted consciously in disregard of the plaintiff's rights or with reckless indifference to the consequences when he was aware of his conduct and also aware from the existing circumstances that his conduct would probably result in injury to another.

In his arguments, the plaintiff has cited the Supreme Court decisions in *Gooden v. Commonwealth*, 226 Va. 565, 311 S.E.2d 780 (1984); and *Cable v. Commonwealth*, 243 Va. 236, 415 S.E.2d 218 (1992); and the Court of Appeals decisions in *Lawson v. Commonwealth*, 35 Va. App. 610, 547 S.E.2d 513 (2001); and *Vance v. Commonwealth*, (Virginia Court of Appeals Record No. 1646-07-3, 2008 Va. App. LEXIS 508 (2008)). These are all involuntary manslaughter criminal cases, upholding convictions where the victim while hunting was shot and killed by another hunter. The plaintiff notes the similarity between the facts in these cases found to be sufficient to support criminal negligence (killing a person in a manner so gross, wanton, and culpable as to show reckless disregard for human life) and the facts alleged in our case. The plaintiff posits that the standard of criminal negligence although expressed in slightly different terms is substantially the same as the standard of willful and wanton conduct supporting punitive damages in civil cases. The plaintiff thus concludes that the factual allegations he has made in the complaint which include, but are not limited to, the defendant's duty to properly identify his target and everything in the area prior to firing his weapon constitute sufficient factual allegations to require the Court to overrule the demurrer to gross negligence and willful and wanton conduct supporting an award of punitive damages.

In *Cable v. Commonwealth*, 243 Va. 236, 415 S.E.2d 218 (1992), the defendant and victim, both experienced hunters, were hunting together in the mountains in dense vegetation dressed in camouflage with blackened faces. Seeing no turkeys all morning, the pair decided at lunch to hunt squirrel. The defendant thinking he was loading his automatic shotgun with number four birdshot accidentally reloaded with double aught buckshot capable of inflicting grievous wounds at a distance. The two separated and 20 minutes later the defendant thinking the victim was behind him heard something sounding like a squirrel jumping in a tree, saw a flash of movement and shot at something black in color. The defendant who admitted he had distance vision problems and did not wear eyeglasses heard the victim holler he had been shot. The victim died of his wounds, and the defendant was convicted of involuntary manslaughter.

In *Gooden v. Commonwealth*, the victim, wearing red apparel hunting deer, was shot and killed by a single bullet fired from a rifle while standing

next to his young brother-in-law on top of a knoll in a cleared power line easement. In the area that was crowded with hunters, two unidentified persons were seen running in the distance. In the investigation, the defendant admitted firing at a deer on the edge of the right of way from a position hundreds of yards away with a downward trajectory. A ballistic analysis proved the victim was killed by a bullet fired from one of the rifles the defendant carried that day. The evidence also showed the defendant fired multiple times briefly pinning down the young man hunting with the victim. The trial judge found the defendant had shot blindly, failing to exercise even slight care to assure safe firing of his weapon thereby demonstrating callous disregard for the lives of persons hunting in the area.

In *Lawson v. Commonwealth*, the defendant, an experienced hunter, shot and killed with double aught shot his friend and the dog at his feet at the spot where the friend had been sitting on a log calling a turkey. This was at a location about 200 yards into the friend's property which the defendant did not have permission to hunt. The defendant fired at a movement of something black bobbing up and down looking exactly like a turkey. The Court of Appeals reversed a conviction of trespass for lack of proof of willful intent but sustained a conviction of involuntary manslaughter, citing *Cable v. Commonwealth*, in rejecting the defendant's argument that his actions amounted to mere simple negligence. Similar to *Cable*, the evidence had been the defendant fired at a flash of movement, black in color, without identifying his target before firing. Although the defendant did not intend to kill the victim, the circumstances of firing into thick brush without ascertaining a dark object was actually a turkey in an area he knew was occupied by at least one other hunter evidenced a wanton and culpable disregard for human life amounting to criminal negligence.

In *Vance v. Commonwealth*, an unpublished opinion, the Court of Appeals upheld the defendant's conviction of involuntary manslaughter, finding that he acted in a criminally negligent manner when he unintentionally killed a camouflaged hunter he thought to be a turkey at a time when turkey hunting was prohibited. The defendant, an experienced hunter, hunting turkey out of season with a .50 caliber muzzleloader rifle in a heavily wooded area fired at a flash of movement thinking it to be a turkey 187 feet away and 18 feet above the ground. When defendant realized what really happened, he went to his house where he left the muzzleloader and went back out with a .22 caliber rifle and his dogs. The defendant gave inconsistent stories about where he had been and what he was doing. The victim, appellant's cousin, was shot while hunting in a camouflage tree stand in camouflage clothing with a camouflage bow. The victim had a turkey call in his mouth. Expert testimony established that experienced turkey hunters use turkey calls to lure turkeys close to their stand. The trial court's conviction was sustained based on its finding that the defendant had violated the "cardinal rule" that a target and the background behind it must be clearly identified and the

defendant knew or should have known other people were hunting the area that day.

The rulings of the Supreme Court in *Gooden* and *Cable* were both four to three decisions. In *Gooden*, Justice Cochran, dissenting, joined by Chief Justice Carrico and Justice Stephenson, wrote that, while the fatal shooting was a tragic accident, hunting is a lawful recreational pursuit sponsored by the state, the defendant was not required to insure the safety of other hunters within rifle range, and that those hunting were aware of the inherent risk of danger where high powered weapons may be lawfully used. He concluded that upholding the conviction amounted to imposition of a rule of strict liability and, most apropos to our case, said "we have not approved such a rule in civil litigation and we are not justified in applying it in a criminal prosecution. Although the evidence is sufficient to establish ordinary negligence, I do not agree that it is sufficient to establish criminal negligence." *Gooden*, 226 Va. at 574.

In *Cable*, Justice Stevenson, writing in dissent, joined by Chief Justice Carrico and Justice Harrison, wrote "the defendant and the victim were not only good friends and hunting companions but the victim soon would have been the defendant's son-in-law. It is inconceivable that the defendant would consciously show a reckless disregard of the victim's life." *Cable*, 243 Va. at 243.

Notwithstanding such strong dissents in the Supreme Court, the majority has affirmed involuntary manslaughter convictions upon finding that factual scenarios similar to that in our case were sufficient to support the type of wanton conduct that constitutes criminal negligence. Wanton and willful civil conduct is so like criminal negligence that significant weight must be given to the criminal case decisions cited by the plaintiff. The facts may be close, but the Court finds that the Demurrer should be overruled at this juncture. There, of course, remains a question of whether the Court after hearing the evidence would instruct a jury on civil willful and wanton conduct and on awarding punitive damage.