**ON REHEARING**

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1702**

_____

KAITLIN VASTERLING,

　　　　Plaintiff – Appellee,

　　v.

ALISON DIRLE,

　　　　Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Lawrence Richard Leonard, Magistrate Judge.  (2:22-cv-00339-LRL)

_____

Submitted:  December 16, 2025　　　　　　　　　　Decided:  January 21, 2026

_____

Before AGEE, THACKER, and RICHARDSON, Circuit Judges.

_____

Reversed and remanded with instructions by unpublished per curiam opinion.

_____

**ON BRIEF:**  John D. McGavin, Kara A. Schmidt, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellant.  Robert J. Haddad, RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this diversity action, Defendant-Appellant Alison Dirle appeals a $266,906.03 verdict in favor of Plaintiff-Appellee Kaitlin Vasterling, who alleged that Dirle's conduct preceding a severe car accident rose to the high standard of willful and wanton negligence under Virginia law. For the reasons set forth below, we reverse the district court's decision and remand the case for entry of final judgment in favor of Dirle.

I.

Independence Boulevard is a major throughfare in Virginia Beach, intersected at various points by crossing medians that allow drivers space to pause between lanes and await clearances in traffic to complete their traversal.*

On February 16, 2022, Vasterling traversed the northbound half of Independence Boulevard and entered the median. As Vasterling entered the road's southbound lanes, she saw another vehicle approaching rapidly, but believed she had time to cross. Moments later, Dirle's SUV slammed into Vasterling's minivan while traveling nearly 80 miles per hour. The impact sent Vasterling's vehicle spinning into a third vehicle, severely injured Vasterling's son, and caused Vasterling to suffer minor physical injuries and acute emotional trauma. The speed limit at the point of impact was 45 miles per hour.

---

* The district court made these undisputed factual findings following trial, which neither party contested. See *Vasterling v. Dirle*, No. 2:22CV339, 2023 WL 3727930, at *7 (E.D. Va. May 30, 2023) ("Neither party disputes these facts.").

Dirle, who traveled daily on Independence Boulevard to her workplace, had attempted to pass another vehicle and reenter the road's lefthand lane, where the accident occurred. Evidence established that Dirle accelerated to 81 miles per hour in three-tenths of a mile as she attempted to pass the other vehicle, and that she had slowed to 76 miles per hour immediately before the collision. Dirle testified that she was personally familiar with the area, had attended the local school Vasterling was driving toward at the time, and had grown up in the surrounding neighborhood. The school, Shelton Elementary, is located approximately 0.2 miles from Independence Boulevard on Shelton Road. There were no school zone or crossing signs on the stretch of Independence Boulevard where the crash occurred.

The crash destroyed the rear of Vasterling's minivan, dislodged her son from his seat, and left him bloodied, immobile, and buried in debris. He could not be removed from the vehicle until emergency services arrived and transferred him to a nearby hospital to be treated for severe injuries. Vasterling experienced minor physical injuries herself but now suffers acutely from "substantial and ongoing" emotional trauma, including panic attacks and nightmares, general agitation and inconsolability, tendencies to self-isolate, and a newly-developed stutter. J.A. 193.

Following the crash, Vasterling, then a citizen of North Carolina, sued Dirle in the Eastern District of Virginia under diversity jurisdiction. 28 U.S.C. § 1332(a). Vasterling alleged a single count of willful and wanton negligence against Dirle, and sought $367,548.97, plus interest, in compensatory damages. Vasterling made no separate claim

for negligence or gross negligence, resting her only theory of liability on willful and wanton negligence.

At a bench trial, the district court found Dirle liable for willful and wanton negligence due to her extreme conduct and the resulting injury, which it concluded demonstrated "an egregiously reckless disregard for the rights of others." *Vasterling*, 2023 WL 3727930, at *10. Dirle was ordered to pay $266,906.03 in damages plus post-judgment interest. In making its decision, the court held that Dirle's "knowledge of the existing conditions, and her reckless indifference to the consequences of her actions, pushe[d] her conduct to willful and wanton negligence." *Id.* at *9. In the court's view, this knowledge entailed, essentially, a general understanding of traffic conditions on Independence Boulevard, awareness of the school's location, and the common sense that traveling at 81 miles per hour in an urban area "does not go unnoticed and does not happen due to mere inattention." *Id.* at *4. In totality, the court concluded that Dirle's conduct amounted to "knowledge of the danger involved in her extraordinary speeding based on her knowledge of the existing conditions," and rose to willful and wanton negligence. *Id.* at *9; *see id.* at *4.

Dirle noted a timely appeal, and this court has jurisdiction under 28 U.S.C. § 1291. She raises a single issue on appeal, arguing that her conduct, as a matter of law, fails to meet the standard for willful and wanton negligence under Virginia law. We agree.

4

II.

We review the district court's judgment "under a 'mixed standard of review,' reviewing factual findings for clear error and conclusions of law *de novo*." *Harrell v. DeLuca*, 97 F.4th 180, 189 (4th Cir. 2024) (quoting *Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 341, 433 (4th Cir. 2005)). A federal court in diversity jurisdiction "must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule." *Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974). Last, we review de novo "a district court's determination of state law." *Grimmett v. Freeman*, 59 F.4th 689, 692 (4th Cir. 2023) (cleaned up).

Virginia law recognizes three degrees of negligence: simple negligence, gross negligence, and willful and wanton negligence. *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997). "Simple negligence is the failure to use the degree of care an ordinary person would exercise to avoid injury to another." *Id.* Gross negligence "is action which shocks fair-minded people, but is less than willful recklessness." *Id.* Willful and wanton negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (quoting *Griffin v. Shively*, 315 S.E.2d 210, 212–13 (Va. 1984)). "Gross negligence and ordinary negligence differ from one another only in degree, but . . . willful and wanton conduct . . . differs in kind from both of them. . . . [It] convey[s] the idea of purpose or design, actual or constructive." *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327 (Va. 1990) (cleaned up).

5

Expressly, "[w]illful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999). "The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness." *Curtis v. Highfill*, 840 S.E.2d 321, 324 (Va. 2020) (quoting *Infant C.*, 391 S.E.2d at 327). "However, ill will is not a necessary element of willful and wanton negligence." *Alfonso*, 514 S.E.2d at 618. "Each case raising an issue concerning the sufficiency of a claim of willful and wanton negligence must be evaluated on its own facts." *Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005) (quoting *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2005)). "An actor guilty of willful and wanton conduct intends his act, but not the resulting harm." *Infant C.*, 391 S.E.2d at 328.

"If reasonably fairminded men may differ as to the conclusion of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, a jury is the proper tribunal to decide the question of negligence . . . . But where fair-minded men cannot differ as to the conclusion, it becomes a question of law for the court." *Steele v. Crocker*, 62 S.E.2d 850, 852 (Va. 1951). In other words, whether conduct rises to willful and wanton negligence is to be determined by the factfinder, unless the conduct fails to meet the standard as a matter of law, in which case, the decision remains with the court. *Griffin*, 315 S.E.2d at 212 ("Generally, negligence . . . only become[s] [a] question[] of law to be determined by a court, when reasonable minds could not differ.").

6

Particularly pertinent to this appeal, the Supreme Court of Virginia has advised caution in applying any standard that would "turn every intentional moving traffic violation into a case of willful and wanton negligence." *Harman*, 486 S.E.2d at 101–02. "Traffic laws are established for the safety of those who are on the public roads. Every time a driver intentionally violates a traffic law, by definition, the violator is on notice that other users of the road may be injured as a result of his violation." *Id.* at 102. Thus, such conduct alone generally fails to rise to the standard of willful and wanton negligence, absent some significant aggravating factor. *Id.*

A survey of relevant case law suggests the Supreme Court of Virginia has found such an aggravating factor—or found the claim suitable for a factfinder to determine—in three general situations. Those are (1) circumstances involving drivers that have received specialized training and acted in contravention of that training; (2) circumstances suggesting malice or an intent to harm; and (3) circumstances involving intoxicated drivers and egregious traffic violations, often after receiving warnings as to the hazardous nature of their driving. Apart from these contexts, claims for willful and wanton negligence generally fail as a matter of law.[2]

First are cases that involve a defendant acting in contravention of some specialized training that should have placed the defendant on notice as to the danger and wrongness of

---

[2] That is not to say reckless driving that is "so gross, wanton, and culpable as to show a reckless disregard of human life" cannot sustain a *criminal* conviction of felonious negligence under Virginia law. *See, e.g.*, *Brown v. Commonwealth*, 685 S.E.2d 43, 46 (Va. 2009) (quoting *Greenway v. Commonwealth*, 487 S.E.2d 224, 228 (1997)).

his or her conduct. This genre of cases has, for instance, involved truck drivers who failed to follow specific safety protocols and caused harm as a result. *See, e.g.*, *Alfonso*, 514 S.E.2d at 616–19 (holding that a failure to place flares and reflectors behind a stalled tractor-trailer, which another driver then crashed into, was a dereliction of protocol and willful and wanton negligence). Dirle had no such special training, so this line of case law is inapposite.

Second, some decisions have found willful and wanton negligence where a defendant acts with malice or intent to harm. These circumstances are rare and include, for example, swerving into and out of a plaintiff's lane with apparent intent to run the plaintiff off the road; or intentionally running down a pedestrian plaintiff and striking him at 20 miles per hour. *See Etherton v. Doe*, 597 S.E.2d 87, 88–89 (Va. 2004); *Friedman v. Jordan*, 184 S.E. 186, 186–87 (Va. 1936). There is no direct or indirect evidence that Dirle intended to strike Vasterling or otherwise conducted herself maliciously. Rather, as the district court found, Dirle "wanted to get out in front" of another vehicle "which cut her off" and avoid competing with vehicles merging onto Independence Boulevard. *Vasterling*, 2023 WL 3727930, at *10. Dirle expressly testified her intent in making such maneuvers was to enter the lefthand lane and avoid "oncoming traffic that merges from Northampton Boulevard onto Independence[.]" J.A. 157. These facts fail to suggest malice or harmful intent.

Third, and most frequently, are cases in which the defendant engaged in some egregious traffic violation while intoxicated, after being made specifically and immediately aware of the hazardous nature of their conduct.

8

More precisely, Virginia courts have held that defendants who receive and ignore notice as to the danger of their driving immediately prior to an accident are more likely culpable of willful and wanton negligence. *See, e.g.*, *Booth v. Robertson*, 374 S.E.2d 1, 1 (Va. 1988) (holding that the defendant was made aware of his reckless driving prior to a crash when a truck swerved to avoid a collision, honked its horn, and flashed its lights); *Clohessy v. Weiler*, 462 S.E.2d 94, 96–97 (Va. 1995) (opining that willful and wanton negligence requires "a finding that the defendant had prior knowledge of specific conditions that would likely cause injury to others" and rejecting the argument that general knowledge an area was residential could suffice as a driver's knowledge of specific conditions preceding a pedestrian being struck).

In *Booth*, a defendant entered a highway from the wrong direction with a blood alcohol content of 0.22, sped into oncoming traffic while ignoring horns and flashing lights before narrowly avoiding a crash with a semi-truck, and eventually collided head-on with the victim a half-mile down the road. 374 S.E.2d at 1. Conduct of such nature, the Supreme Court of Virginia opined, was "so willful and wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct," and thus met the high standard of willful and wanton negligence. *Id.* at 3.

A decade later, in *Webb v. Rivers*, the Supreme Court of Virginia reaffirmed its conclusion that a defendant must commit truly egregious traffic violations while intoxicated and alerted to the danger of their conduct to be found willfully and wantonly negligent. 507 S.E.2d 360, 362–63 (Va. 1998). In *Webb*, an "entirely intoxicated" defendant drove past a red light at 90 miles per hour in a 25 miles-per-hour zone and

9

slammed into plaintiff's vehicle. *Id.* at 361. The Court concluded such conduct was sufficiently egregious to rise to willful and wanton negligence because it "evinced a conscious disregard of the rights of others." *Id.* at 362–63.

Nonetheless, neglectful conduct by inebriated drivers often fails to rise to the level of willful and wanton negligence. In *Hack v. Nester*, the defendant had two previous convictions for driving under the influence, drank most of a pitcher of beer before driving his vehicle, drove on the wrong side of the highway at night without a left headlight, allegedly suffered from night blindness, and killed another driver in a head-on collision. 404 S.E.2d 42, 43 (Va. 1990). The Supreme Court of Virginia concluded this conduct was insufficient to constitute willful and wanton negligence, reasoning that because the defendant's blood alcohol content reflected a relatively low level of intoxication, and he had not received express warnings as to the danger of his driving, he could not be held willfully and wantonly negligent. *Id.* at 45.

Time and again, the Supreme Court of Virginia has clarified that willful and wanton negligence is a very high bar. *See, e.g.*, *Clohessy*, 462 S.E.2d at 96–97 (deeming Clohessy's operation of a vehicle 10 miles over the speed limit in a residential neighborhood with a fogged windshield and deactivated headlights when she struck a pedestrian no more "than ordinary negligence"); *Harman*, 486 S.E.2d at 100, 101–02 (finding that tailgating a plaintiff at high speeds until both vehicles ran off the road was not willful and wanton negligence); *Puent v. Dickens*, 427 S.E.2d 340, 342 (Va. 1993) (opining that a defendant speeding while drunk and rear-ending plaintiff was "insufficient to justify a finding" of willful and wanton negligence); *Woods*, 574 S.E.2d at 268 (holding that actively drinking

alcohol while driving with a "BAC level significantly greater" than required for a criminal conviction and being aware of the dangers of falling asleep at the wheel *was* sufficient for willful and wanton negligence).

From these cases, we can distill that where a driver is not intoxicated and engages in dangerous, but only negligent, conduct, the driver will not be found to have committed willful and wanton negligence as a matter of Virginia law. The common theme in Virginia case law is the confluence of incapacitated driving and extremely egregious traffic violations beyond that of excessive speeding, coupled with express warning(s) as to the danger of their conduct prior to the incident itself. This combination of factors, as seen in *Huffman*, *Booth*, and *Webb*, creates the probability an accident will occur, and suggests that such conduct is undertaken with conscious understanding of that probability. Additionally, to the best of our research, the Supreme Court of Virginia has not held that an *unintoxicated* defendant willfully and wantonly negligent unless they ignored some specialized training or acted with express or implied malice. There is no evidence that Dirle was intoxicated at the time of the crash or suggesting that malice may be implied to her conduct. Moreover, Dirle received no specific warnings, be they from signage, other drivers, or another near incident. The district court found that Dirle generally knew of traffic conditions in the area and should have been aware parents would be crossing the median to deliver their children to the local school, and held this sufficient to show conscious disregard for the rights of others. But under Virginia precedent, these facts are insufficient to serve as specific warning of the potential danger of one's hazardous conduct so as to sustain a claim for willful and wanton negligence. *See Clohessy*, 462 S.E.2d at 96

11

(requiring a defendant have "prior knowledge of *specific conditions* that would likely cause injury to others) (emphasis added)).

In short, Dirle received no special training as a driver to inform her conduct, did not act maliciously or so recklessly as to evince intent to harm or consciously disregard the rights of others, was not intoxicated, and received no specific warnings or special notice as to the hazardousness of her actions. Her conduct fits no pattern of facts associated with willful and wanton negligence in Virginia case law and qualifies only as simple or gross negligence—claims Vasterling did not plead. Dirle's undisputed conduct therefore fails to satisfy the requirements of a willful and wanton negligence claim as a matter of law.

In her motion for rehearing and accompanying brief, Vasterling disagrees with this Court's conclusion that no tribunal applying Virginia law has held an unintoxicated individual driving recklessly or in violation of traffic laws to be liable for willful and wanton negligence. She cites, for the first time, *Clohessy* as support. 462 S.E.2d at 96. There, the Supreme Court of Virginia, in finding the defendant's conduct did *not* rise to willful and wanton negligence, noted that the case "ha[d] none of the aspects of willful and wanton conduct shown *in part* by (1) the intoxications and prior incidents giving notice of danger . . . (2) [] willfulness . . . or (3) [] grossly excessive speed and erratic driving." *Id.* (emphasis added). The first two categories cited in *Clohessy* fit well the categories discussed *supra*. *Id.* at 97.

To the extent *Clohessy* cites reckless driving in violation of traffic laws as a third category, it is an outlier, and stands, to our knowledge, as the sole Virginia case (before or after) to even suggest that "grossly excessive speed and erratic driving" could be sufficient

12

*alone* to serve as the knowledge of special circumstances necessary to uphold a finding of willful and wanton negligence. And while it did not elaborate, *Clohessy* contains the "in part" caveat at the outset of its three categories, further undermining that this consideration alone would be dispositive. *Id.* Moreover, *Clohessy* does not hold that "grossly excessive speed and erratic driving" *will* constitute willful and wanton negligence; rather, it merely offers such conduct as a marker in *dicta* distinguishing *Clohessy* from cases where such a finding was made. *Id.* at 96–97. No analysis was offered, and the Court offered a single cite as support for this notion: *Mayo v. Commonwealth*, 238 S.E.2d 831, 831–33 (Va. 1977). *Id.* at 97.

*Mayo*, in turn, immediately stands out as a criminal negligence case and thus not clearly an authority in a civil claim of willful and wanton negligence. *Id.* The Supreme Court of Virginia in *Mayo* addressed an involuntary manslaughter appeal, and reviewed whether the defendant's driving was reckless enough to support the conviction. 238 S.E.2d at 833. While the standards for criminal negligence and both civil gross and willful and wanton negligence could share elements, we can identify no case explicitly stating they may be interchanged. And we decline to rely upon somewhat muddled comparative criminal standards to undergird a civil decision.[3] Our reticence is particularly appropriate here given both the last-ditch and somewhat *ad hominem* arguments that appear for the first time in a petition for rehearing and, as addressed above, our determination that

---

[3] Felonious negligence under Virginia law requires "negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *King v. Commonwealth*, 231 S.E.2d 312, 316 (Va. 1977).

*Clohessy* stands as an outlier for that proposition within Virginia's robust body of willful and wanton negligence civil case law. In short, Vasterling's reliance on these cases is misplaced.

## III.

For the above reasons, we conclude the district court erred, as a matter of Virginia law, in ruling that Dirle was willfully and wantonly negligent in her conduct. Dirle was entitled to such finding as a matter of law. We therefore reverse the district court's judgment and remand the case with instructions that the district court enter final judgment in favor of Dirle.

REVERSED AND REMANDED
WITH INSTRUCTIONS

14