# CIRCUIT COURT OF AUGUSTA COUNTY

Annette M. Carpenter

v.

Richard N. Hawkins, III

June 14, 2016

Case No. CL15001622-00

BY JUDGE VICTOR V. LUDWIG

This matter comes before the Court on the demurrer filed by the Defendant, Hawkins, to the claim by the Plaintiff for punitive damages. The parties argued this matter on April 14, 2016. Having carefully considered the parties' memoranda and reviewed the controlling law, I sustain the demurrer.

*Standard*

"To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967) (internal quotations omitted). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554 (2003). Thus, for the purposes of this matter, the Court will assume that the facts as pleaded by Carpenter as to the issue of punitive damages are true and will draw reasonable inferences therefrom. *E. I. Du Pont De Nemours & Co. v. Snead's Adm'r*, 124 Va. 177, 184 (1919); Va. Code Ann. § 8.01-273; *see TC MidAtlantic Dev., Inc. v. Commonwealth*, 280 Va. 204, 214 (2010).

It is in light of these principles that I have considered Hawkins' demurrer.

*Facts*

Eliminating those allegations that simply relate to the fact that the accident occurred, which are necessary for the case to go forward even on a simple negligence theory, the Court will focus on and accept as facts the allegations directly relevant to the issue of punitive damages in Carpenter's amended complaint. Briefly summarized, Carpenter alleges (a)

that Hawkins "is a life-long opiate addict," (b) that he knew that, if he did not maintain "a certain level of opiates in his system," he would experience withdrawal symptoms, including confusion, distractibility, and "overall impairment of driving ability," (c) that he used opiates on November 12 or 13, 2012, (d) that, on the day of the accident, he was experiencing "extreme withdrawal symptoms" from not having used opiates during the previous 48 hours and that he was "very ill," (e) that the symptoms resulted in "an overall impairment of his ability to drive," (f) that, knowing that, Hawkins elected to drive on November 15, (g) that he "knew or should have known before choosing to operate a motor vehicle that his ability to operate a motor vehicle was impaired," and (h) that while driving, Hawkins "knew or should have known his ability to operate a motor vehicle was impaired.

That is an impressive statement of facts, but the case law does not support its justifying an award of punitive damages. It demonstrates some culpability beyond simple negligence, but it does not rise to the level of conduct indicating an intention to harm others. The facts fall "far short of the egregious conduct [which the Supreme Court has] previously found necessary to support a finding of willful and wanton negligence," conduct so egregious that it shocks fair-minded people. *Harris v. Harmon*, 253 Va. 336, 341 (1997).

### Analysis

At the outset, I observe that we are dealing here with a common law claim for punitive damages, not a statutory one. I say that because the most recent case decided on this issue is *Cain v. Lee*, 290 Va. 129 (2015), and because Carpenter cites the case for the wrong proposition. *Cain* involved the application of Va. Code Ann. § 8.01-44.5, which authorizes an award of punitive damages if certain criteria are established. However, neither that case nor Va. Code Ann. § 8.01-44.5 have any application to the case at bar because Carpenter cannot assert a claim based on the statute.

Nevertheless, in response to Hawkins' suggestion that punitive damages are generally not favored, *see Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 269 Va. 421, 425 (2005) (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992)) ("[P]unitive damages are generally not favored and 'should be awarded only in cases involving the most egregious conduct'."), Carpenter states in her memorandum that, in light of *Cain*, "the court [and presumably he means this Court] cannot say as a matter of law that punitive damages are 'generally not favored'." (Pl.'s Mem. in Opp. 10.) On the contrary, the Court's observation in *Cain* in no way impacts the general proposition as it applies to a common law claim for punitive damages. In *Cain*, the Court clearly distinguished between a common law claim and a statutory claim and concluded that the elements of a common law claim simply do not apply to increase the plaintiff's burden if he establishes the statutory elements prescribed by Va. Code Ann. § 8.01-44.5.

> [T]he punitive damages discussed in *Xspedius Mgmt. Co.* were common law punitive damages; the punitive damages at issue in the present case are statutory punitive damages. Unlike common law punitive damages, statutory punitive damages have been explicitly approved by the General Assembly. As such, we cannot say, as a matter of law, that such punitive damages are "generally not favored." Indeed, logic would dictate otherwise.

*Cain,* 290 Va. at 135. The Court's pointed distinction between a common law claim and a statutory claim and its limiting its observation to "such," *i.e.,* statutorily authorized, damages lead to the conclusion that the general proposition still applies with full force to common law claims for punitive damages.

I have read all of the cases to which the parties have directed me, and I have assessed all in light of a claim for punitive damages at common law. I have not described each of them in detail in this opinion because some add little to the conversation. Some, *e.g., Friedman v. Jordan,* 166 Va. 65 (1936), address what is clearly intentional conduct, whereas others, *e.g., Giant of Virginia, Inc. v. Pigg,* 207 Va. 679 (1967); *Bowers v. Westvaco Corp.,* 244 Va. 139 (1992), are completely out of context, and, one, *Alfonso v. Robinson,* 257 Va. 540 (1999), involved the application of a slightly different standard because the defendant, who did not comply with required safety procedures, was a professional driver.

There is a thread that runs through them, and, using that thread, it appears that one may weave a canvas on which to paint the terms of a unifying principal that connects the holdings in all of them. But this principal did not emerge without its fair share of critics. In *Doe v. Isaacs,* an unknown motorist rear-ended Isaacs's vehicle with such force that his wife, a passenger, lost consciousness. 265 Va. 531, 534 (2003). The motorist staggered from his car, noticed the wife's injuries, and pleaded with Isaacs, his speech slurring, not to call the police. *Id.* When Isaacs told the motorist that his wife was injured, he began shaking Isaacs's car. *Id.* Thereafter, the motorist stated, "I could bring my car down . . . I can park over there, and you can park over there, we will be out of the way of everybody, and we can talk. . . . [I]'ll run up and get my car and come down here." *Id.* Isaacs never heard from him again. *Id.* Yet, the Supreme Court reversed the trial court's decision to permit recovery of punitive damages. *Id.* at 539. In his dissent, joined by Justice Lemons, Senior Justice Carrico nearly snarled (with justification): "If this is not conduct so willful and wanton as to evince a conscious disregard of the rights of others, it is difficult to discern what is." *Id.* at 540.

Beginning as early as *Booth v. Robertson*, 236 Va. 269 (1988),[1] and running through *Etherton v. Doe*, 268 Va. 209 (2004),[2] both of which approved an award of punitive damages, the standard has either subtly evolved or has been surgically refined, but not always well articulated. That standard (which consistently describes a "conscious disregard of the rights of others"), as applied by the Supreme Court, demands that the defendant harbor some cognizable sense that his conduct or condition poses a risk to others. Moreover, the thread (thin or obscure as it is in some of the cases,[3] even disregarded altogether in one) that seems to tie it all together is that the defendant recognize, *after he has begun driving*, that his conduct or condition creates the risk and that his recognition be based on empirical evidence and not merely on a recognition of his own physical or mental impairment. That is, none of the cases approve a finding of punitive damages when the claim is based on the defendant's initial decision to drive while intoxicated or when he is sleepy or when he has night blindness. All of the cases which affirm the issue of punitive damages being submitted to the fact-finder or which approve the award of punitive damages involve events that occurred after the defendant was behind the wheel, *e.g.*, weaving, colliding with other vehicles, falling asleep, because it is events that occurred while he was driving that should have resulted in his conscious recognition of the egregious nature of his conduct.

---

[1] The defendant, driving with a BAC of .22%, entered the interstate on the wrong ramp and headed south in the northbound lane. *Booth*, 236 Va. at 270–71. Initially, he nearly collided with a tractor-trailer, the driver of which "blinked his lights and blew a constant blast on his air horns," turning right and left (successfully) to avoid a collision. *Id.* at 270. Nevertheless, Robertson continued in the wrong direction at "a high rate of speed" and shortly thereafter collided with the defendant. *Id.* He had a BA of .22% at the time. *Id.* at 271. Robertson was (or most certainly should have been alerted) to his outrageous behavior by a semi confronting him, issuing warning signals and taking evasive action.

[2] Doe ran Etherton off the road. *Etherton*, 268 Va. at 212. Apparently Doe became irritated by what he misperceived to be Etherton's impatience while they were stopped at an intersection. Having passed through the intersection, as the two vehicles travelled in the same direction, Doe watched and stared at Etherton's passenger, and, for no apparent reason, veered into Etherton's lane of travel without having signaled, causing her to veer left to avoid him. *Id.* at 211–12. Doe returned to his lane momentarily, but then "repeated the maneuver, coming even further into [Etherton's] land and forcing [her] to swerve" very close to the curb. *Id.* at 211. Shortly thereafter, without signaling, Doe pulled in front of Etherton and stopped in her path, forcing Etherton to brake and strike the curb, resulting in injuries to her. Doe then left the scene. *Id.* at 212. Again, the defendant engaged in behavior while driving that clearly would have alerted him that his conduct was outrageous.

[3] The number of dissents in this line of cases alone speaks for itself. *E.g., Doe v. Isaacs*, 265 Va. 351 (2003); *Woods v. Mendez*, 265 Va. 68 (2003); *Huffman v. Love*, 245 Va. 311 (1993).

Time does not permit me to address each case in detail, but a brief summary might suffice. Omitting *Booth* and *Etherton* because I have already described them, the relevant cases are:

a. *Hack v. Nester*, 241 Va. 499 (1990): The defendant had two prior convictions for driving while intoxicated, drove after consuming a pitcher of beer, and operated his vehicle with one bad headlight while suffering from night blindness. *Id.* at 502, 506–07. All of those were bad decisions, but there was no event that occurred on the road that would alert him to how outrageous his conduct would appear to be, and the award of punitive damages was reversed.

b. *Huffman v. Love*, 245 Va. 311 (1993): The defendant, having been drinking an hour before the accident and, while operating his vehicle in excess of the posted speed limit with a BAC of .32%, drove into the oncoming lane, struck the defendant, and then left the scene. *Id.* at 313. Within a mile of his collision with the plaintiff (and prior to it), the defendant had struck another vehicle. *Id.* The issue was presented to the trial court on a motion *in limine*, and the Supreme Court reversed the trial court's striking the claim for punitive damages. *Id.* at 313–16.

c. *Puent v. Dickens*, 245 Va. 217 (1993): The defendant, after having recently imbibed bourbon and having a BAC of .24%, apparently traveling at a high rate of speed and without braking, struck the rear of the plaintiff's car as it was stopped at an intersection. *Id.* at 219. The parties proffered the evidence to the trial court, the judge sustained a motion to strike the claim for punitive damages, and the Supreme Court sustained the judge's decision. *Id.* at 219–21.

d. *Clohessy v. Weller*, 250 Va. 249 (1995): The defendant struck the plaintiff, a pedestrian, while driving in excess of the speed limit, at night, with a fogged windshield, and without having turned on her headlights. *Id.* at 251–52. In reversing the trial court's having instructed the jury on the issue of willful and wanton negligence, the Supreme Court noted:

> [T]he evidence in this case does not support a finding that the defendant had prior knowledge of specific conditions that would likely cause injury to others. Compare *Huffman v. Love*, 245 Va. 311, 315, 427 S.E.2d 357, 360 (1993) (highly intoxicated driver's knowledge that continued driving was dangerous shown in part by earlier collision shortly before subject collision), and *Booth v. Robertson*, 236 Va. 269, 270, 272-73, 374 S.E.2d 1, 1, 2-3 (1988) (highly intoxicated driver's knowledge that driving wrong way on interstate highway was dangerous shown in part by near collision with another vehicle shortly before subject collision), with *Hack v. Nester*, 241 Va. 499, 506-07, 404 S.E.2d 42, 45 (1991) (no prior accident or warning of dangerous driving to intoxicated driver before subject collision). And this case has none of the

> aspects of willful and wanton conduct shown in part by (1) the intoxications and prior incidents giving notice of danger in *Huffman* and *Booth*, (2) the willfulness in *Friedman v. Jordan*, 166 Va. 65, 68, 184 S.E. 186, 187 (1936) (motorist's intentional collision with bicyclist), or (3) the grossly excessive speed and erratic driving evident in *Mayo v. Commonwealth*, 218 Va. 644, 648-49, 238 S.E.2d 831, 831-33 (1977) (driving about twice posted 35 mile-per-hour speed limit in residential area resulting in involuntary manslaughter conviction).

*Id.* at 253. I offer this extended cite only because it is quite clear in its summary of the case law prior to it.

e. *Webb v. Rivers*, 256 Va. 460 (1998): The defendant, with a BAC of .21% (and other evidence to indicate that he was drunk as a lord), while traveling 90 m.p.h. in a 25 m.p.h. zone, ignored a red light at an intersection and struck the plaintiff. *Id.* at 462. The trial court struck the plaintiff's claim for statutory punitive damages, and the Supreme Court reversed. *Id.* at 464. I cannot reconcile this case with the others.

f. *Woods v. Mendez*, 265 Va. 68 (2003): There were two defendants in this case. Molle operated his vehicle after consuming ten beers and with a BAC of .13% to .14%, continuing to drink while driving. *Id.* at 71–72. He had not slept, had actual or constructive knowledge that he was likely to fall asleep while driving, and, in fact, did fall asleep, which caused him, without any evasive action, to strike the plaintiff's vehicle in the rear. *Id.* at 72. Mendez, driving with a BAC of .18%, "intentionally swerved his vehicle back and forth across three lanes of highway "in a manner that impeded and obstructed other highway drivers," which maneuver impeded Woods' progress and left him exposed to Molle's striking him from behind. *Id.* at 78. Molle's conduct seems not so clearly to fit into my analysis; Mendez's was intentional conduct, by definition conscious conduct in disregard of the rights of others.

In the case at bar, Hawkins elected to drive with a monster of a headache, but there is nothing to indicate that, once he began driving, there was any event that caused him to realize that his condition had a significant negative impact on his driving. There is no allegation that there was any external event that alerted him to the fact that his ability to drive was impaired or that his conduct was in conscious disregard of the rights of others. Hawkins's driving with knowledge of the potential effect of his withdrawal symptoms is indistinguishable from the defendant who drives while knowing he is under the influence of alcohol, and that is insufficient to justify an award of punitive damage. *See Baker v. Marcus*, 201 Va. 905, 910 (1960) ("One who knowingly drives his automobile on the highway under the influence of intoxicants, in violation of statute, is, of course, negligent. It is a wrong, reckless and unlawful thing to do; but it is not necessarily a malicious act.").